(Decided 28th January, 1892.)

THE NORTH BALTIMORE PASSENGER RAILWAY COM-PANY *vs.* THE NORTH AVENUE RAILWAY COMPANY.

*Street railways—Implication in Derogation of the Rights of the Public—Electricity as a Motive power—Right to Use same.*

By the Act of 1872, ch. 369, a street passenger railway company was incorporated, and it was invested with all necessary power to construct and operate its railways in the City of Baltimore, on such streets as might be designated by ordinance of the Mayor and City Council, and upon such terms, and subject to such conditions, as might be made by such ordinance, and to receive and take tolls. In the exercise of the power thus vested in the Mayor and City Council, an ordinance was passed conferring power on the company to lay its tracks on certain named streets, and power was reserved to grant to any other road the right to use said tracks under such regulations, and upon the payment of such sum or sums of money to the said first mentioned company, as should be agreed upon by the Mayor and City Commissioner and the president of said company. By sections 806, 810, 814, 820, of Article 4 of the Code of Public Local Laws, the Mayor and City Council were invested with full power and authority over the streets of the city, and the streets were declared to be public highways. By the Act of 1890, ch. 370, additional authority was conferred on the Mayor and City Council to regulate the use of the streets by railway or other tracks. HELD:

1. That, according to a well settled principle of construction, no implication will be indulged in derogation of the rights of the

234     MARYLAND REPORTS.

North Balto. Pass. Railway Co. *vs.* North Ave. Railway Co.

public, in the absence of express or plain terms of grant; and therefore an intention to grant an *exclusive privilege or monopoly* will not be implied, nor will a grant of privileges be given scope and effect, in restriction of public right, beyond what the plain words require; and this principle of construction is no less applicable to grants of privleges by municipalities, affecting the public, than to grants of such privileges directly by the State.

2nd. That although at the time of the passage of said ordinance, electricity was not used as a motive power for street cars, the power reserved in said ordinance was sufficiently comprehensive to enable the Mayor and City Council to grant to another company the right to use the tracks of the first mentioned company with cars propelled by electricity.

3rd. That the fact that some change in the structure of the railway tracks and road-bed would be necessary to adapt them to the use of cars propelled by electricity, and some disturbance of the road and its operations might thereby be occasioned, could make no difference, as such change and disturbance would not be allowed without just compensation.

APPEAL from the Circuit Court No. 2, of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, FOWLER, and McSHERRY, J.

*Bernard Carter,* for the appellant.

*Francis K. Carey,* and *Fielder C. Slingluff,* (with whom was *Julian I. Alexander,* on the brief,) for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

The bill was filed in this case by the plaintiff, the present appellant, against the defendant, the appellee, both being street passenger railroad companies, for the purpose of obtaining an injunction against the defendant

company, to restrain this latter company from using the street railroad tracks of the plaintiff company, on North avenue, in the City of Baltimore, between McMechin street and Charles street, or from laying an inside and outside rail on the road of the plaintiff, as provided in ordinance No. 23, approved April 8th, 1891.

The defendant company answered the bill, and proof was taken to be used at the hearing of the application for the injunction. A hearing was had upon bill, answer and proof; and the Court by its order of the 29th of October, 1891, granted an injunction to restrain the defendant company from laying rails for its track or tracks, on North Avenue, inside the rails of the tracks of the plaintiff company; but the injunction prayed for was refused in all other respects. This appeal is taken only from that part of the order that refused the injunction as prayed; and therefore it presents no question on that part of the case covered by the injunction granted.

The plaintiff company was incorporated by the Act of 1872, ch. 369, as the Baltimore, Peabody Heights and Waverly Passenger Railroad; but by subsequent Act, that of 1880, ch. 488, the name was changed to that of the North Baltimore Passenger Railway Company. By the original Act of incorporation, it was provided that the corporation thereby created should be "invested with all necessary power to lay down and construct, maintain, use and operate, passenger railways in the City of Baltimore, on all such streets or parts of streets as may be designated in any ordinance or ordinances which may be passed on the subject by the Mayor and City Council of Baltimore, and *upon such terms and subject to such conditions as may be made by such ordinance or ordinances,* and to receive and take such tolls," &c.

Before the passage of this Act of incorporation, the Mayor and City Council had, by ordinance, passed on the 28th of March, 1872, given license or authority to certain

individuals to construct passenger railroads on certain streets of the city; and, after the incorporation of the plaintiff company, the rights and authority conferred by the ordinance of the 28th of March, 1872, were assigned and transferred to the plaintiff company. After this assignment, the Mayor and City Council, by ordinance No. 74 of 1872, approved June 7th, of that year, ratified the assignment to the plaintiff company; and, in addition to the powers conferred by the original ordinance, the city conferred power on the plaintiff company to lay its tracks on and use North avenue from John street to the corner of Charles street and North avenue. By the third section of this last mentioned ordinance, the city made the following reservation:

"If at any time hereafter the Mayor and City Council of Baltimore shall grant to any other road the right to lay railway tracks and run thereon city passenger cars on North avenue west from John street, they shall then have power to grant to such other road to run their cars upon the tracks of the Baltimore, Peabody Heights and Waverly Railroad, [now the North Baltimore Company] on North avenue, between Charles and John streets, under such regulations and upon the payment of such sum or sums of money to said Baltimore, Peabody Heights and Waverly Railroad as shall be agreed upon and fixed by the Mayor, City Commissioner, and the president of said Baltimore, Peabody Heights and Waverly Railroad, or a majority of them."

It was under this last mentioned ordinance of 1872, the reservation in which has just been recited, that the plaintiff company proceeded to construct and operate its road of double tracks on North avenue, between McMechin street on the west, and Charles street on the east, of Jones' Falls; the rails of the plaintiff's road being laid on the bridge of the city constructed over the falls. This road has been, up to the present time, operated exclusively by horse power.

In May, 1889, the defendant company was incorporated under the general railroad incorporation law of this State, (Code, Art. 23) and by the certificate of incorporation the company is declared to be incorporated "for the purpose of constructing and running a passenger railway in the City of Baltimore, the whole line of said road being located in said city, and the *termini* of said road being therein," etc. In the certificate of incorporation there is nothing said as to the motive power intended to be employed, whether animal or mechanical; but by subsequent proceeding it appears that electricity was intended to be used as the motive power of the road. By the Act of the General Assembly of 1890, ch. 217, this charter of the defendant company was amended, the amendatory Act providing that the company should be authorized and empowered to consolidate with such other roads as it might cross or connect with, to aid such roads in construction, and to lease or purchase such road or roads.

Having been thus incorporated, and given additional powers by the amendatory Act of the Legislature, the defendant company obtained from the Mayor and City Council of Baltimore, ordinance No. 23, of 1891, approved April 8th, 1891. By that ordinance the right is given the defendant company to "lay down and construct double iron railway tracks for the purpose of its business, beginning, for the extension of such double tracks, on North avenue at its intersection with the east side of McCulloh street, the present terminus of the tracks of said company as heretofore authorized, and running thence on North avenue, eastwardly to Guilford avenue, and running thence on Guilford avenue and North street, southwardly, to the intersection of North street with Lexington street, and thence on Lexington street, westwardly, to Charles street, and on North street, southwardly, to the north side of Fayette street." And

238          MARYLAND REPORTS.

North Balto. Pass. Railway Co. *vs.* North Ave. Railway Co.

by the third section of this ordinance, it is declared that it shall be lawful for the defendant company to use the tracks now laid on North avenue by several named companies, among which is the plaintiff company, "in the manner and to the extent to which it is lawful for the Mayor and City Council to grant to the said North Avenue Railway Company the right to use said tracks; and in any case in which the said railroads are entitled to the exclusive use of said tracks, and the said North Avenue Railway Company cannot agree with them for the joint use of their said tracks, then it shall be lawful for the said North Avenue Railway Company to lay its rails inside and outside of said tracks of other roads; provided, that if inside and outside rails are laid, the distance between its rails and the corresponding rails of the other railroads shall not be less than six inches, nor more than two feet." And then, in a distinct clause in the same section, is added this provision: "The right to run the cars of the North Avenue Railway Company on the tracks of the North Baltimore Passenger Railway Company (the plaintiff in this case) on North avenue, from Charles street to McMechin street, is hereby granted under the terms of ordinance No. 74, approved June 7th, 1872; but nothing herein contained shall be construed to grant any right or privilege to the said North Avenue Railway Company to lay any additional tracks on North avenue bridge." By the fourth section, authority is given the defendant company to propel its cars by electricity, supported from overhead wires, upon and over any part of its railway now constructed or hereafter to be constructed, and to erect and maintain the necessary poles and wires for this purpose," upon complying with certain terms prescribed.

The Mayor and City Council of Baltimore are invested with full power and authority over the streets of the city, including North avenue, and all the streets and

JANUARY TERM, 1892.          239

North Balto. Pass. Railway Co. *vs.* North Ave. Railway Co.

alleys of the city are declared to be public highways.
Code Local Laws, Art. 4, secs. 806, 810, 814, 820.   The
General Assembly of 1890, by Act, ch. 370, for the
purpose of conferring additional authority on the Mayor
and City Council, provided "that they shall have power
to regulate the *use of the streets,* lanes and alleys in said
city, *by railway or other tracks,* gas or other pipes, tele-
graph, telephone, electric light or other wires and poles,
in, under, over or upon the same," &c.

We have referred thus fully to the special terms and
provisions of the statutes and ordinances involved, for
the purpose of bringing them clearly in view, as upon
their construction depends the decision of the principal
questions presented on this appeal.

The plaintiff in its bill charges that the defendant
threatens and is about to proceed to dig up the bed of the
plaintiff's road on North avenue, and to lay rails thereon,
inside and outside the tracks of the plaintiff under the
pretended authority derived from the ordinance of the
8th of April, 1891; that the defendant threatens and
intends to tear up, move, and render impassable for
horse cars, the said tracks of the plaintiff, whereby it
will be prevented from exercising its franchise as a com-
mon carrier of passengers, and will suffer a great pecuni-
ary loss in its business, incapable of definite ascertain-
ment.   It further charges that it has ground to believe
that it is the purpose of the defendant, under the sup-
posed authority relied on by it, to take up the railway
tracks of the plaintiff as they are now laid and constructed
along North avenue from Charles street to McMechin
street, and lay down in substitution thereof rails of a
different character.   The right to do the things charged
as being contemplated and intended by the defendant,
the plaintiff denies, and charges that the defendant has
no right or power whatever to take up or interfere with,
in any manner, the railway tracks of the plaintiff, or the

240          MARYLAND REPORTS.

North Balto. Pass. Railway Co. *vs.* North Ave. Railway Co.

structures on which they rest, nor to lay down any other rails or railway structure in lieu thereof.

The plaintiff also charges that the defendant company, by reason of a defect or omission in its certificate of incorporation, has acquired no power to construct the street railway projected by it; also that it is attempting to evade the express provisions of the statute law of the State by erecting on North street, a part of the route of the defendant, as defined in the ordinance, an elevated railway; and that it also proposes and intends to use electricity as a motive power for its cars, in violation of law.

On these allegations, the prayer of the bill is, that the defendant company be restrained and forever enjoined from tearing up, removing, obstructing, or in any manner interfering with the railroad tracks of the plaintiff on North avenue, or any part of them, and from tearing up or digging in the bed of said avenue, between the the plaintiff's road tracks thereon; and generally from in any manner hindering, obstructing, interfering with, or molesting the plaintiff in the use of its road, as now used and operated on said avenue.

The defendant company, by its answer, controverts and denies the exclusive right or claim set up by the plaintiff, as against the defendant; and controverts the several grounds upon which the plaintiff relies for restraining the use by the defendant of the plaintiff's road and road tracks on North avenue. It insists upon the validity of the ordinance of April 8th, 1891, and upon all the rights thereby granted to the company.

The testimony taken was to show in what manner, and to what extent, the road of the plaintiff would be affected in its value and operation, by the use of the tracks or road bed as is proposed to be done by the defendant.

The plaintiff, in support of its contention that the defendant should be enjoined as prayed, has insisted in argument—

North Balto. Pass. Railway Co. *vs.* North Ave. Railway Co.

1. That by the true construction of the ordinance of June 7th, 1872, and of the ordinance of April 8th, 1891, no valid right is granted to the defendant company to use the tracks or the road bed of the plaintiff company on North avenue, for cars propelled by electricity.

2. That by reason of the omission specially to designate the place of *termini* in the certificate of incorporation of the defendant, that company acquired no corporate franchise or right to construct a railroad between the points named in the ordinance of the 8th of April, 1891, and that, therefore, the ordinance is void.

3. That the ordinance is void because it authorises the construction by the defendant company, on a part of its route, of an elevated railroad, in utter disregard of express provision of the statute; and,

4. That the ordinance is void, because it authorises the defendant company to use electricity as a motive power of its cars, without warrant of law.

1. The first of these propositions is the principal one in this case; and it depends for its solution upon the principles of construction applicable to cases of delegated authority to municipal agents for public benefit, and upon principles of construction applicable in cases of grant of licenses or privileges by such agents, that may be set up in derogation of, or in restriction of, public rights.

The plaintiff derived its chartered rights from the Legislature of the State; but that charter was subject to the provision, and, of course, was accepted subject to that provision, that the Mayor and City Council should exercise their discretion with respect to the streets, and the terms and conditions, to be prescribed by ordinance, upon which the franchise should be enjoyed. This discretionary power, vested in the Mayor and City Council, was exercised in the passage of the ordinance of June 7th, 1872. By that ordinance reservations were made,

and those reservations were in the interest of the public. As trustees of the public, holding powers for, and charged with duties to promote the interest of the public, such reservations were eminently proper to be made by the Mayor and City Council. It is not to be supposed that the Legislature, in granting the charter to the plaintiff company, in 1872, intended that the Mayor and City Council should, by ordinance passed in pursuance of that charter, grant away the control, or in any way abdicate their power of supervision over such streets as they might designate as the route over which the plaintiff company might construct its road. The reservation was intended, manifestly, to prevent monopoly, and it is sufficiently broad to keep within the control of the city authorities the right to make available to the city and the public any improved mode of propelling cars that could be reasonably adapted to the tracks of the plaintiff's road, without an additional incumbrance of the street. The language of the reservation is very comprehensive, and is without qualification. The authority reserved is to grant *to any other road* the right to lay tracks on North avenue, and that the Mayor and City Council shall have power to grant to *such other road* the right to run its cars upon the tracks of the plaintiff on North avenue, *under such regulations* as shall be prescribed. This was the express condition upon which the plaintiff accepted the license or privilege of constructing its road on North avenue, under the ordinance of the 7th of June, 1872. But it now insists that this unqualified reservation should be restrictively construed, and that, as electricity was not used as a motive power on street cars at the time of this reservation made, its meaning should be declared to be that the right to grant to any other road the privilege of using the plaintiff's road tracks on North avenue is confined to such other road as shall use horse or animal power alone, as the motive power of its cars. This con-

struction we cannot adopt. It would not be in accordance with the established rules of construction applicable to cases like the present.

It is a well settled principle that no implication will be indulged in derogation of the rights of the public, in the absence of express or plain terms of grant. An intention to grant an exclusive privilege or monopoly will not be implied, nor will a grant of privileges be given scope and effect, in restriction of public right, beyond what the plain words employed require. This is an established principle applicable in the construction of grants by the State, and it is equally applicable in the construction of grants of privileges by a municipal corporation, affecting public rights. *Omaha Horse Railway Co. vs. Cable Tramway Co. of Omaha*, 30 *Fed. Rep.*, 324; *Sioux City St. Railway Co. vs. Sioux City*, 138 *U. S.*, 98, 107; *Thompson's Law of Electricity*, sec. 40, and cases therein referred to. The principle is well illustrated by the decision of the Supreme Court in the very recent case of *Stein vs. Bienville Water Supply Co.*, 141 *U. S.*, 67. There it was claimed that a contractor had the exclusive right of supplying water to the municipal corporation, but the claim to such exclusive right was not maintained; and the Court held, among other propositions, that where a contract with a municipality is susceptible of two meanings, one restricting, the other extending, powers of the other party, that is to be adopted which works least harm to the municipality. In other words, where there is any want of a plainly expressed intention, the construction should be beneficial to the public. Here the language of the reservation is plain, and unless it be restricted as against public right, the contention of the plaintiff cannot be maintained.

Taking it then as being clear, that the reserved power in the ordinance of June 7th, 1872, is amply comprehensive to enable the Mayor and City Council to grant to the

244 MARYLAND REPORTS.

North Balto. Pass. Railway Co. *vs.* North Ave. Railway Co.

defendant company the right to use the tracks of the plaintiff company, on North avenue, with cars propelled by electricity, the question next presented is, is the manner of interference with and change in the structure of the plaintiff's railway tracks and road bed, to adapt them to the use of the defendant's cars, within and justified by the terms of the reservation of the ordinance?

The power to the defendant company to use the tracks of the plaintiff is given by the ordinance of April 8th, 1891, in the fullest manner in which the Mayor and City Council could confer it; and to make the grant of the privilege practical and useful to the defendant company, a right to make such necessary alterations and adaptations in the plaintiff's tracks and road bed, as may be reasonable and proper, would seem to be but the dictate of reason. It is shown by the proof that the use of the same tracks by the two different motive powers is quite feasible. It is true, it may be difficult to determine, *a priori*, what may be the extent of interference required, or the extent of inconvenience and loss that may be suffered, by the alterations in the tracks proposed to be made. But that is not the question here as the case is now presented. The main question is as to the extent of the power reserved to the city by the ordinance of the 7th of June, 1872. The plaintiff accepted the privilege of making and operating its road on North avenue, under the ordinance, subject to an *unqualified power* reserved to the city, of granting the right to another company to use the tracks of the plaintiff when made. That right has been granted to the defendant company with the privilege of using electricity as a motive power. And as we determine that such grant was fully authorized by the power reserved to the city, the grant of the right to use the tracks of the plaintiff must carry with it all such reasonable powers and incidents as may be necessary to make it effectual.

That there may be a considerable amount of disturbance of the plaintiff's road and the operations thereof, occasioned by the introduction of the defendant's cars thereon, moved by electrical power, is not unlikely to occur. But such change and disturbance are not to be allowed without just compensation to the plaintiff company. The ordinance of June 7th, 1872, makes the provision that the cars of the defendant company can only run upon the plaintiff's tracks *"under such regulations and upon the payment of such sum or sums of money"* to the plaintiff company, *"as shall be agreed upon and fixed* by the Mayor, City Commissioner, and the president of the plaintiff company, *or a majority of them."* And the ordinance of the 8th of April, 1891, grants the power of the use of the tracks by the defendant, under and according to the terms of ordinance No. 74, approved June 7th, 1872. This, therefore, is the contract of the parties; and it must be conformed to as a condition precedent to the exercise of the right of the defendant to enter upon or use in any manner the tracks and property of the plaintiff. This provision of the ordinance is simply in accordance with the settled general rule of law upon the subject; 2 *Dill. Mun. Corp.*, sec. 727; *Jersey City and Bergen Railroad Co. vs. Jersey City and Hoboken Horse Railroad Co.*, 20 *N. J., Eq.* 61; and justice, as well as the principle of analogy to cases resting upon the power of eminent domain, require that the compensation should be ascertained and paid, if required, before the property of the plaintiff is appropriated to the use of the defendant company. The injunction therefore should go to restrain the defendant company from any use or disturbance by it of the plaintiff's road tracks or road bed, on North avenue, between Charles and McMechin streets, until compensation is fixed and determined, and, if required, duly paid, as provided by the ordinance.

North Balto. Pass. Railway Co. *vs.* North Ave. Railway Co.

The other questions raised and presented in the brief and argument for the plaintiff,—that in regard to the omission to define the *termini* in the certificate of incorporation of the defendant; that in regard to the alleged illegal construction of an elevated railroad on North street; and that in regard to the want of authority of the Mayor and City Council to confer the right on the defendant company to use electricity as a motive power in running its cars on the streets of Baltimore City,—have all been considered and determined in the preceding case of *Koch, et al. vs. The North Avenue Railway Company, ante p.* 222. Suffice it to say here, that the conclusion of the Court in respect to all those questions is adverse to the contention of the plaintiff, so far as the same can affect this case.

It follows that so much of the order of the Court below as has been appealed from by the plaintiff must be reversed, and the cause be remanded that an injunction may issue in accordance with the foregoing opinion.

*Order reversed in part, and*
*cause remanded.*