McDonald vs. The City of Ashland.

McDONALD, Respondent, vs. THE CITY OF ASHLAND, Appellant.

*November 25 — December 16, 1890.*

*(1, 2) Notice of injury from defect in highway. (3) Foot-bridge, when part of public way. (4) Constructive notice of dangerous condition of bridge. (5) Physicians and surgeons: Qualifications as witnesses, how proved. (6) Damages.*

1. The notice of injury given pursuant to sec. 1339, R. S., is not a proceeding in an action, but is competent evidence in any action in which it is necessary to prove the service thereof.
2. In an action by a married woman for an injury caused by a defect in a highway, it is immaterial that the notice of such injury was signed by her husband as well as by herself.
3. A bridge built by a private citizen with lumber furnished by the town, and forming a part of the sidewalk in a platted street, and used daily by pedestrians, is *held* to be a public way both by user and by acceptance by the town of the platted street in which it was erected.
4. Where the dangerous condition of a foot-bridge, caused by the accumulation of ice and snow thereon, had existed several weeks before the plaintiff was injured by falling thereon, and the jury found for the plaintiff under instructions submitting to them the question whether such condition had continued a sufficient length of time to charge the city with constructive notice thereof, it is a verity that the city had such notice.
5. The qualifications of a physician to testify in a professional capacity (under sec. 1436, S. & B. Ann. Stats.) may be proved by his own oral testimony, without producing his diploma or proving by record evidence the incorporation of the institution or society which granted it or that he is a member of one of the medical societies designated.
6. A verdict for $3,500 in favor of a woman whose hip was permanently injured, the leg being shortened one inch, and who suffered much pain and other inconveniences likely to be permanent, is *held* not so excessive as to warrant the interference of the court.

APPEAL from the Circuit Court for *Ashland* County.

This is an action to recover damages for personal injuries alleged to have been received by the plaintiff by reason of the insufficient and dangerous condition of one of the pub-

lic streets in the defendant city. The facts conclusively proved on the trial, and those which the jury were authorized to find from the testimony, are as follows:

Second street in the city of *Ashland* extends through the city in an east and west ·direction. It is several miles in length and is the principal business thoroughfare in the city. It is improved and used for general travel for a long distance from the west to where it crosses Stuntz avenue, which is another public street of the city running north and south. Second street is not used for travel with teams east of Stuntz avenue, but there is a sidewalk along the south side of the street from 115 to 120 feet east of the avenue. A portion of this sidewalk is a bridge across a ravine which seems to have been properly constructed. The bridge was built in 1886 by a citizen who desired to use it, but the town of Ashland (the city not then having been organized), by its proper officers, furnished the lumber for it. It was built gratuitously. At the time the plaintiff was injured, and before, a horse-barn and barber-shop stood in the street east of and near the east line of the avenue, but these structures did not encroach upon such sidewalk. Several families resided on Second street east of the bridge, and the members thereof and others were accustomed to use the bridge and sidewalk as a public footway. From the early part of the winter of 1887–88, snow and ice were allowed to accumulate on the bridge until a high ridge of ice was formed in the center, sloping to the sides. Up to the time the plaintiff was injured, the same had not been cleaned. On January 30, 1888, as the plaintiff was carefully passing over the bridge, she slipped and fell, thereby receiving the injuries complained of.

Further reference to the testimony, and a statement of the rulings of the court on the trial, which are assigned for error, will be found in the opinion. The trial resulted in a verdict and judgment for the plaintiff for $3,500. A mo-

tion on behalf of defendant for a new trial was denied, and judgment entered for plaintiff in accordance with the verdict. The defendant appeals from the judgment.

For the appellant there was a brief by *Dockery & Kingston*, and oral argument by *E. J. Dockery*.

For the respondent there was a brief by *Tomkins, Merrill & Smith*, and oral argument by *W. M. Tomkins*.

LYON, J. 1. A notice of the alleged injury, substantially in the form prescribed by statute (R. S. sec. 1339), signed by the plaintiff and her husband, was given to the city clerk of *Ashland* within the time prescribed by the statute. Such notice was offered in evidence by the plaintiff, and received, against an objection on behalf of the defendant. Although it does not so appear in the record, it was alleged by counsel for the city in his argument that the plaintiff and her husband had previously commenced an action against the city for the same injury, and that such notice was one of the papers in that suit. If such be the fact, it is quite immaterial. The notice is not a proceeding in this or any action, but is an essential preliminary to the commencement of an action for the injury complained of, and is competent evidence in this or any action in which it is necessary to prove the service thereof. The plaintiff having signed the same, the requirement of the statute was complied with, and it is immaterial that her husband also signed it. His signature is mere surplusage.

2. It is contended that the bridge on which plaintiff was injured is not a public highway. The evidence is to the contrary. It shows that the bridge was constantly traveled by pedestrians, that it was constantly used by the families east of it and others, and was crossed by twenty-five or thirty people daily. It appears, further, that the town of Ashland furnished the lumber used in its construction. It was therefore a public way both by public user and ac-

ceptance by the town of the platted street in which it was erected.

3. It is further claimed on behalf of the city that its authorities had no notice of the insufficiency and dangerous condition of the bridge. Indeed, the street commissioner and supervisor of the ward in which it is located testified that they did not know of its existence. But there is ample proof that the dangerous condition of the bridge had existed several weeks before the plaintiff was injured. The court submitted to the jury the question whether such condition had continued for a sufficient length of time as reasonably to charge the city authorities with constructive notice thereof. By finding for the plaintiff, the jury must have answered the question in the affirmative. It is therefore a verity in the case that the city had constructive notice of the condition of the bridge.

4. Dr. Rhinehart was called by the plaintiff to testify as an expert to the nature and extent of her injuries. He testified that he is a physician, that he graduated at the Jefferson Medical College (which is understood to be located in Pennsylvania), from which he had a diploma, and that such college is incorporated. On cross-examination he testified that he did not know for certain, but only in a general way, that it was incorporated, but that he formerly practiced as a physician under his diploma in that state, and that the laws of Pennsylvania prohibit a person practicing medicine unless he has a diploma from a regular legal medical college, authorized to confer degrees. He also testified that he was not a member of a medical society. The witness was thereupon allowed to testify as an expert. Counsel for defendant moved to exclude his testimony on the ground that he was not qualified so to testify. The motion was denied. Sec. 1436, 1 S. & B. Ann. Stats. p. 888, provides that "no person practicing physic or surgery, or both, shall have the right . . . to testify in a professional capacity

as a physician or surgeon in any case, unless he shall have received a diploma from some incorporated medical college, or shall be a member of the state or some county medical society, legally organized in this state." The question in this case is, In what manner may such qualifications be proved? Proof thereof is merely of preliminary or collateral facts in the case, and we are satisfied that they may properly be proved by the oral testimony of the physician himself, without producing his diploma or proving by record evidence the incorporation of the institution or society which granted it, or that he is a member of one of the societies designated in the statute. Any other rule might lead to great hardship in particular cases by excluding the professional testimony of competent and even eminent practitioners. We cannot think it was the intention of the legislature, in the enactment of the statute, to expose suitors to any such hardship. Besides, it would be a great injustice to the members of the medical profession to require them always to be provided with record and statutory evidence of their qualifications to give professional testimony. Moreover, we understand it to be the universal practice in the trial courts of the state to permit such qualifications to be proved by parol testimony. We recall no case which has reached this court in which any other practice has been pursued. This fact is entitled to great weight. We conclude that the testimony of Dr. Rhinehart was properly admitted.

5. Counsel for defendant also contends that the damages awarded by the jury are excessive. The jury might have found — presumably did find — that the neck of the femur of plaintiff's left thigh was fractured where it is attached to the pelvic bones; that the capillary ligaments surrounding the hip joint are permanently thickened; that the limb is shortened about an inch; that she cannot flex it outward or to the left without pain; that her capacity for walking is greatly lessened; that she suffers pain almost constantly;

that one side and the small of her back are sore, and she
has much headache since she was injured; that she could
walk long distances without difficulty before her injury;
and that many of these conditions, and the most of them,
will be permanent. Under this testimony, we cannot say
that the damages are excessive. Counsel relied much upon
the case of *Goodno v. Oshkosh*, 28 Wis. 300, to sustain his
position; but in that case there was every reason to believe
that the injuries were not permanent. Yet this court sanc-
tioned a verdict for $3,000 damages. The case is really
authority against the defendant on this question. Where,
as in the present case, the injuries are serious, and probably
permanent, the courts hesitate to hold that the damages
assessed by the jury are excessive. It requires a very
strong case to justify the interference of the courts. This
does not seem to be such a case. We might be better sat-
isfied with the verdict here had it been for a less sum, but
we cannot disturb it without encroaching upon the prerog-
atives of the jury.

*By the Court.*— The judgment of the circuit court is
affirmed.