MARY BIRMINGHAM, by Guardian ad Litem, Respondent, v.
THE ROCHESTER CITY AND BRIGHTON RAILROAD COMPANY,
Appellant.

A bridge over a canal of the state, where it intersects a highway, while
under the care, custody and control of the state, is to be regarded as
part of the highway.

Where a street railroad company, organized for the purpose of construct-
ing its road along a city street, which is intersected by a state canal
crossed by a bridge erected by and under the control of the state,
lays its tracks and runs its cars over the bridge, it does not thereby
make the bridge an appliance of its own, within the meaning of the rule
which exacts extreme care and caution from common carriers in relation
to the condition of the appliances employed by them; but its liability,
while on the bridge, is none other than or different from its liability,
while traversing the rest of the street.

Plaintiff, who was a passenger on one of defendant's cars, while crossing
a canal bridge, was injured by the breaking of an attachment to the
bridge, which was defective when placed in position, the defect being
discoverable by the maker in the process of manufacture, but not dis-
coverable from any examination that could be made by any person using
the bridge for crossing. The plan and method of construction of the
bridge were approved by and it was built under the direction and super-
vision of the proper state officers; it had been in position and use for
over a year, and nothing had occurred to raise a doubt as to its entire
safety. *Held*, that an action was not maintainable against defendant to
recover damages for the injury.

(Argued December 19, 1892; decided January 17, 1893.)

APPEAL from judgment of the General Term of the Supreme
Court in the fifth judicial department, entered upon an order
made March 29, 1892, which affirmed a judgment in favor of
plaintiff entered upon a verdict and affirmed an order denying
a motion for a new trial.

This was an action to recover damages for injuries received
by plaintiff, through the alleged negligence of defendant,
while a passenger on one of its horse cars.

The facts, so far as material, are stated in the opinion.

*Theodore Bacon* for appellant. To charge the defendant
with negligence, a witness for the plaintiff having testified

that up to the time of the accident certain devices tending to the further security of the bridge were lacking, was permitted, against the objection and exception of the defendant, to testify that such devices had thereafter been supplied; this was error. (*Payne* v. *T. & B. R. R. Co.*, 9 Hun, 526 ; *Dale* v. *D., L. & W. R. R. Co.*, 73 N. Y. 468; *Getty* v. *Town of Hamlin*, 127 id. 636.) For an injury happening to the person of a passenger by mere accident without fault on its part, defendant is not responsible, but is liable only for want of due care, diligence or skill. (Angell on Carriers, § 521; Story on Bail. §§ 590, 601, 602; *Christie* v. *Griggs*, 2 Camp, 79, 81; *Aston* v. *Heaven*, 2 Esp. 533 ; *McPadden* v. *N. Y. C. R. R. Co.*, 44 N. Y. 478; *Carroll* v. *S. I. R. R. Co.*, 58 id. 126.) The proposition stated by the General Term after the first trial of the case, and followed upon the second trial, that the defendant is chargeable with fault for not doing something which it had no legal right to do, and which if it had attempted to do, it would have been a trespasser and violator of public law, is error. (*Mayor, etc.*, v. *T. A. R. R. Co.*, 117 N. Y. 404; *C. & C. B. Co.* v. *S. R. Co.*, 15 L. R. A. 828.)

*John Van Voorhis* for respondent. The defendant was guilty of negligence, and plaintiff was entitled to damages. (*Palmer* v. *D. & H. C. Co.*, 120 N. Y. 170 ; *Carroll* v. *S. I. Co.*, 58 id. 126–138; *Hegeman* v. *W. R. R. Co.*, 13 id. 9 ; S. & R. on Neg. 494 ; *Caldwell* v. *N. J. S. Co.*, 47 id. 282; Thompson on Carriers, 221 ; *P. Co.* v. *Roy*, 102 U. S. 451; *R. R. Co.* v. *Walrath*, 38 Ohio, 466 ; *Thorpe* v. *N. Y. C. R. R. Co.*, 76 N.Y. 402 ; *Dolan* v. *N. D. & C. R. R. Co.*, 120 id. 580; *Goodrich* v. *N. Y. C. & H. R. R. R. Co.*, 116 id. 398; *Gotleib* v. *L. E. & W. R. Co.*, 100 id. 462; *Fuller* v. *Jewett*, 80 id. 46; *McElroy* v. *N. & S. R. R. Co.*, 4 Cush. 400 ; *R. R. Co.* v. *Barron*, 5 Wall. 104 ; *Peters* v. *Rylands*, 20 Penn. St. 497 ; *Maverick* v. *E. A., etc., Co.*, 36 N. Y. 378; *Webster* v. *F. S. R. R. Co.*, 50 id. 203 ; *Curtis* v. *Syracuse, etc., Co.*, 18 id. 534, 537; Angell on Carriers, § 569 ; S. & R. on Neg. § 59;

*Lowery* v. *M., etc., Co.,* 99 N. Y. 158 ; *Mullin* v. *St. John,* 57 id. 467 ; *Breen* v. *N. Y. & H. R. R. Co.,* 109 id. 297 ; 1 Thompson on Neg. 46 ; *Bowen* v. *N. Y. C. R. R. Co.,* 18 N. Y. 408.) If a verdict had been rendered for the defendant it would have been the duty of the court to set it aside as against evidence. (*D., L. & W. R. R. Co.* v. *Converse,* 139 U. S. 469 ; *Deyo* v. *N. Y. C. R. R. Co.,* 34 N. Y. 9 ; *Dwight* v. *G. Ins. Co.,* 103 id. 343 ; *Bulger* v. *Rosa,* 119 id. 459 ; *Bagley* v. *Bowe,* 105 id. 171 ; *P. Ins. Co.* v. *Damster,* 106 U. S. 30, 32 ; *Griggs* v. *Housten,* 104 id. 553 ; *Randall* v. *B., etc., R. R. Co.,* 109 id. 478, 482 ; *Scho* v. *C., etc., Co.,* 114 id. 618 ; *N. P. R. R. Co.* v. *C. Bank,* 123 id. 727, 733.) It is no error to refuse to submit to the jury a question which has no sufficient foundation in the evidence. (*Alger* v. *Gardner,* 54 N. Y. 360 ; *O'Leary* v. *Walter,* 50 id. 683 ; *Groat* v. *Guile,* 51 id. 431 ; *Doyle* v. *E. & E. I.,* 80 id. 631–634.) The exception to the decision of the court not to submit any question of fact to the jury, except that of damages, is not a valid exception. (*O'Neil* v. *James,* 43 N. Y. 84 ; *Vil. of Port Jervis* v. *F. N. Bank,* 96 id. 550 ; *Ormes* v. *Dauchy,* 82 id. 443 ; *E. F. Ins. Co.* v. *R. Ins. Co.,* 55 id. 343 ; *Massoth* v. *D. & H. C. Co.,* 64 id. 524 ; *Hurlburt* v. *Hurlburt,* 128 id. 420 ; *Griffith* v. *U., etc., Co.,* 43 id. 835.) No exception was taken to the charge and the verdict being in accordance with it should not be disturbed. (*Vil. of Port Jervis* v. *F. N. Bank,* 96 N. Y. 551 ; *Hoyt* v. *L. I. R. R. Co.,* 57 id. 678.)

PECKHAM, J. The defendant owns and operates a street railroad in the city of Rochester. The Erie canal intersects West Main street in that city, and at the intersection the canal is crossed by a bridge built, owned and maintained by the state, and in effect the bridge forms a continuation of the highway of West Main street. It was built under the authority of the act, Chap. 351 of the Laws of 1888, and under the direction of the superintendent of public works, upon plans and specifications drawn up and prepared by the state engineer and surveyor. Its character as a lift bridge was determined by the

statute cited, and the above-named state officers had respectively the exclusive control of the plans and construction of the bridge. When boats were to pass under the bridge it was so constructed as to be lifted vertically by hydraulic power. In order to act as a counter balance and thus to reduce the amount of power necessary to lift the bridge, heavy weights made of iron troughs filled with pig iron were suspended in the upper part of the frame work of the bridge. They were suspended by cables fastened to the floor of the bridge and passing over pulleys in the upper frame work. The troughs were fastened by means of stirrups which were made of iron. The plaintiff was a passenger on one of the defendant's cars on the 4th of October, 1889, and while the car was slowly crossing the bridge in question one of the stirrups gave way and let one end of the troughs drop so that the pieces of pig iron placed in the troughs slid out and some of them fell upon the car beneath and broke through and one of them struck and severely injured the plaintiff. This action was brought to recover of the defendant the damages thus sustained.

The proof showed there was a defect in the welding of the stirrup, which defect was discoverable by the maker in the process of manufacture, but the imperfection was probably not discoverable from an inspection of the stirrup after it was placed in position in the bridge, and it certainly could not be discovered by any means that a person had who used the bridge for the purpose of crossing it, either in a wagon or car, because when the bridge was in condition for a car to cross, the stirrups would be eleven or twelve feet above the floor of the bridge; they were movable and raised as the bridge came down to the grade for crossing it.

It was claimed that this plan or mode of construction was manifestly dangerous and that the danger was so apparent as to be open to ordinary observation, and against the dangers incident to such defective mode the defendant was bound by its contract to protect its passengers. The defect in the plan or method was alleged to consist in the suspension of the iron in the troughs over the heads of people using the

bridge, as such troughs were liable to be precipitated upon them whenever a defect should develop itself in the means of suspension.

The evidence as to the defect in the welding of the stirrup and how it was discoverable, and the plan and method of construction of the bridge itself, as above detailed, was uncontradicted. Upon such evidence the trial judge refused to submit the question of defendant's negligence to the jury, but held that the defendant was liable, and only the question of damages was left to the jury. This liability had been in substance announced by the General Term upon a former appeal to that court from a judgment of nonsuit in the case. The court accordingly charged the jury that although the bridge was built by the state yet the defendant had laid its track thereon, and used it as the bed of its road and had thereby adopted it as part of its track and roadway, and although the state built the bridge and the defendant neither built it nor had any control over it, such fact was wholly immaterial and the defendant was bound to precisely the same liability with regard to any defects in the bridge as though it had built the bridge originally to serve as a part of its railroad and it was bound by the same rules which the law applies to every other common carrier of passengers with reference to the means it adopts as a part of its roadway and part of the appliances which it may have occasion to use in the transaction of its business as a common carrier; that if by any known test the carrier could ascertain that the thing adopted as part of the appliance of its roadbed or car was or was not fit for the purpose to which it was to be applied, if the carrier failed to apply such test and as a result of that failure an accident happened to its passenger and he was thereby injured, the carrier failed to perform its duty and was liable for such injury.

The court further charged that the undisputed evidence showed that a stirrup with a defective welding was placed upon the bridge, and that it might have been discovered had an effort been made so to do before it was put there, and as a

result of such defect the stirrup gave way at the welding and the trough tipped and the iron fell upon the plaintiff, and applying the law as laid down by the General Term, the learned trial judge said these undisputed facts showed necessarily that the defendant was liable, and so he left to the jury only the question of damages.

The defendant moved for a nonsuit at the close of plaintiff's evidence, and renewed the motion at the close of its own evidence. The court denied the motion in each case and the defendant duly excepted.

In refusing to nonsuit the plaintiff and in directing the jury as he did upon the question of defendant's liability, the learned judge erred.

We think the error consisted in applying to their full extent and to the facts of this case the well-known general rules as to the liability of common carriers for the absence of that extreme care and caution which the law exacts from them in relation to the condition both of their roadbed and of the appliances employed by them in operating their roads.

We do not think the defendant rested under any such extreme liability upon the undisputed facts in this case.

It may be assumed the defendant is a corporation organized under the General Railroad Act for the purpose of building a street railroad through certain streets in the city of Rochester. Under that act it acquired no right to cross the canal on any bridge it might build. It acquired no right to build any bridge, and although it might possibly have the power of eminent domain to acquire land for some purposes, it could acquire none in order to build a bridge over the canal. Further legislation for that purpose would have been necessary. And its organization under the General Railroad Act for the purpose of a street railroad required it to keep to the public streets or highways and gave it no right to lay its tracks elsewhere. In the treatment of the question of supplying bridges over the canals, the legislature at an early day provided that bridges should be built by the town in which they should be situated, and that they should be maintained at the

expense of such town, but that no bridge should be constructed across any canal without the permission in writing of one of the canal commissioners under penalties as provided in the act. (Ch. 202, Laws of 1820; 1 R. S. m. p. 248, §§ 191, 192, 193.)

In 1839, by chapter 207, the legislature directed the canal commissioners to construct and thereafter maintain at the public expense road and street bridges over the canal in all places where such bridges had been theretofore constructed, if in their opinion the public convenience required it.   In 1854, by chapter 332, section 9, the legislature prohibited the building of any street or road bridge over any canal, except upon such streets or roads as were laid out, worked and used previous to the construction of the canals by which the streets were obstructed.   And the legislature by special enactment provided for the construction of this particular bridge.   It would seem from this brief reference to legislative action that the canal bridges while under the care, custody and control of the state, have always been substantially regarded as a part of the street which is obstructed by the canal.

In substance and effect the bridge mentioned in this case was nothing more than a continuation of the city street which it connected and, although it might have been necessary for the defendant to have obtained permission of the state authorities before laying its rails and running its cars over the bridge, yet we are of the opinion that in crossing such bridge it did not thereby make it an appliance of its own to the extent stated in the charge of the court below.   We think there is a great difference in the position occupied by this defendant in crossing this canal bridge from that taken by a steam railroad crossing a piece of water or a ravine by means of a bridge of its own building on its own land, and for the purpose of operating its own railroad along its own private roadway.

We think there is the same difference, although the steam railroad company uses the track of another road or the bridge of another company, which it in neither case owns or controls, but which it simply leases or otherwise legally obtains the right to use.   The steam railroad company which owns its

roadbed and builds and controls the bridge on its own prop-
erty, is without doubt within the strict liability of the com-
mon carrier to its passengers. The same may be said of the
company which by contract obtains the right to use the track
or the bridge of another road. In doing so it makes the road-
way or bridge, which it in some way obtains the right to use,
its own and is under the same liability by virtue of its own
act as if it had itself built, equipped and operated the road-
bed or bridge. Where, however, the space to be crossed is a
canal belonging to the state and it is necessary to cross it in
order to carry out the purpose of the company to lay railroad
tracks in the public streets of a city and the bridge forms in
substance a continuation and a part of one of the public streets
of the city, the mere use of such bridge by the company with
the consent or license of the state for the one purpose of con-
tinuing its route along such public highway, does not render
such bridge an appliance of the street railroad company. We
think its liability while on the bridge is none other or different
from its liability while traversing the rest of the public street.
To negligently drive along the street so as to fall or precipi-
tate the stage or car into an open hole in the street, would
render the person or company guilty of such negligence liable
for the injury to a passenger. To drive upon a bridge
which was manifestly unsafe or not strong enough to bear the
proposed weight might be negligence which the company
would be responsible for if any injury happened therefrom to
the passenger.

We do not criticise the rule or assume here to question it as
to the extent of liability ordinarily attaching to a carrier of
passengers, including the liability for a perfect roadbed and
all proper appliances. We simply say that this case is not
one in which to make the application of such extreme liability.
We say the bridge was not such an appliance as is contem-
plated by the rule alluded to and that the liability of the
defendant was no greater while on the bridge than while pur-
suing its route along the public street in the city.

The defendant had no control over or voice in the plan to

be adopted or in the selection of the materials for the structure. It had no right of superintendence in the process of manufacture, nor of inspection of the thing manufactured. It was without power to change the method adopted to adjust these counterbalancing weights or to maintain the slightest control over the manner in which the structure was to be operated. The defendant had no right to itself build a bridge over this canal, and it was not occupying the position of exercising a choice between building a bridge of its own or using one furnished by the state. There was no choice about it. That bridge must be used or the canal could not be crossed.

Where a steam railroad has the right to build a bridge and instead of building leases the right to cross the bridge of another, the reason for holding that such bridge is thereby adopted as its own by the company using it is obvious. It is a voluntary matter on the part of the company whether to build its own or to lease the bridge of another, and if it choose the latter mode of crossing the obstruction it is but another way of obtaining a bridge of its own, and when it thus contracts for its use it of course adopts it as its own structure.

The position of a street railroad in attempting to carry on its business of running cars through the public streets of a city has nothing in common with that occupied by a steam railroad under the circumstances mentioned. And where the street railroad is confronted by one of the canals of the state over which it has no right to build a bridge, but which it is necessary to cross in order to carry out the purpose of its organization, the company may cross such bridge with the permission of the state authorities, without thereby making it a part of its appliance, for a latent defect in which it must be held responsible if discoverable in the process of manufacture. The contract to carry safely does not and ought not to extend that length.

Nor was the evidence in this case sufficient in our judgment to submit to the jury the question of negligence on the part of the defendant in driving on this bridge while the weights were suspended in the manner described. The plan and method

had received the approval of the state engineer and surveyor and the bridge had been built under the direction and supervision of another state officer, the superintendent of public works. It had been in position for over a year and subjected daily to·the strain arising from the traffic over it of all sorts of vehicles and so far as the evidence shows there had not been a doubt expressed or felt as to its entire safety both of plan, material and workmanship. There was nothing to suggest to the general traveler or to the defendant the presence of any defective welding of any of the stirrups which supported the weights of iron and nothing to cause any action on its part in relation thereto, even if any action were possible. If a defect in the welding were dangerous and if any such defect might be discovered by proper inspection in the course of manufacture, it might justly be supposed by the ¨defendant that all such precautions had been taken by the authorities of the state before the stirrups were placed in their position, and that the opening of the bridge for travel was an assurance that no discoverable or preventable defects existed.

Under these facts we think no case was made for the submission of any question of negligence to the jury.

The plaintiff should have been nonsuited and the judgment in her favor must therefore be reversed and a new trial granted with costs to abide the event.

All concur.

Judgment reversed.