## THE NORTHERN CENTRAL RAILWAY COMPANY *vs.* THE UNITED RAILWAYS AND ELECTRIC COMPANY.

*Liability of Street Railway Company for Part of the Cost of Maintaining Bridges Which a Railroad Company is Also Bound to Maintain —Construction of Municipal Ordinances—When a Bridge in a City is a Part of a Street—Contract for Benefit of Third Persons.*

In 1859, an ordinance of Baltimore City authorizing a street railway company to lay its tracks on Charles and other streets, provided that the company "shall keep the streets covered by said track and for two feet on the outer limits of either side of the track in repair at its own expense." Under a ordinance of said city, passed in 1868, the grade of Charles street where it was crossed by the tracks of the Northern Central Railway Company was raised so that the tracks passed under the street instead of at grade as theretofore, and the railway company became bound to pay the cost of keeping in repair the bridge over its tracks then constructed. Under an ordinance of said city, passed in 1880, a bridge, constructed by the city over the tracks of the Northern Central Railway Company at Maryland avenue, was changed for the benefit of the railway company, and it was provided and agreed that the bridge should be maintained at the cost of the N. C. Ry. Co. In 1882, to another street railway company was granted the right to lay its tracks on Maryland avenue and other streets under the same condition as to its keeping in repair at its own cost, the streets covered by the tracks and two feet on either side. The defendant company became

the successor in title of both said street railway companies which had laid their tracks across said bridges in pursuance of the ordinances. The N. C. Ry. Co. having repaired the two bridges brought this action against the defendant street railway company to recover the proportionate part of the cost of the repairs of those parts of the bridges covered by defendant's tracks and two feet on either side thereof. *Held*, that these bridges are streets within the meaning of that word as used in the ordinances imposing upon the street railways the obligations to keep in repair the streets covered by their tracks.

*Held*, further, that the N. C. Ry. Co. is under an obligation to the city to maintain both said bridges to their full extent in repair, and the defendant company is under legal obligation to the city to keep in repair those parts of the bridges covered by its tracks and two feet on either side, and that the contract of the defendant company with the city enures to the benefit of the N. C. Ry. Co. so that, when that company has repaired said bridges to their whole extent, it is entitled to recover from the defendant company the proportion of the cost for which the defendant was liable to the city.

When A is bound by contract to do certain work for B, and C afterwards becomes bound by another contract with A to do a part of the same work, the latter contract enures to the benefit of A, and if A does the whole work he is entitled to recover from C the cost of doing that part which C had contracted to perform.

*Decided April 3rd, 1907.*

Appeal from the Superior Court of Baltimore (PHELPS, J.)

The fifth and sixth counts of the declaration were as follows:

5. And for that whereas, heretofore the plaintiff was the owner and in possession of certain land and premises in the valley of Jones' Falls in the city of Baltimore aforesaid, used by the plaintiff for its railroads, yards, station and other railroad purposes; that, thereafter, and while said land and premises were as aforesaid owned, possessed and used by the plaintiff, the city of Baltimore, in extending and opening two of the public streets of said city, called respectively, Charles street and Maryland avenue, built across said valley of Jones' Falls and across the property so as aforesaid owned, possessed and used by the plaintiffs' two bridges in the line of and as part of said respective streets, and known respectively as Charles

street bridge and Maryland avenue bridge, and opened them to public travel and maintained the same as part of said respective public streets; that after the construction of said Charles street bridge by the city of Baltimore, the Baltimore City Passenger Railway Company, to whose rights and obligations herein said defendant has by operation of law succeeded, by ordinance of the Mayor and City Council of Baltimore, was granted authority to construct, maintain and operate a double line of street railway on Charles street aforesaid, and on and over said Charles street bridge as a part thereof, and did accordingly construct, maintain and operate the same and the defendant still does so on said street and on and over said bridge as a part thereof; that it was a condition of said grant that said passenger railway company should keep the streets covered by its tracks and extending two feet on the out limits on either side of said tracks in repair, by reason whereof the said passenger railway company was and the defendant was and is bound to keep the floor of said Charles street bridge, the same being a part of said street, so far as the same was and is covered by said tracks and extending two feet on the out limits on either side of its said tracks in thorough repair; that after the construction and opening of the Maryland avenue bridge aforesaid in the line of and as part of said public street called Maryland avenue, the Baltimore Traction Company, to whose rights and obligations said defendant has by operation of law succeeded, was granted by ordinance of the Mayor and City Council of Baltimore authority to construct, maintain and operate a double line of passenger railway on Maryland avenue aforesaid and on and over said Maryland avenue bridge, as a part of the same, and accordingly the same was constructed and has been ever since maintained and operated on said street and on and over said bridge as a part thereof by said Baltimore Traction Company and the said defendant; that by said ordinance it was provided as a condition of said grant that said passenger railway company should keep the streets covered by said tracks, and extending two feet on the out limits on either side of said tracks in thorough repair, by reason

348     N. C. RY. CO. vs. UNITED RYS. CO.

Statement of the Case.     [105

whereof the said passenger railway company and the defendant, as its successor, was and is bound to keep in thorough repair the floor of said bridge so far as covered by its tracks and extending two feet on the out limits on either side of said tracks; that the general duty of keeping the said bridges in repair, subject, however, to the conditions of the ordinances aforesaid, is by law imposed upon the plaintiff; that the defendant and its predecessors, recognizing their and its obligation in the premises have, and has, until the times hereinafter mentioned, provided for the repairs needed to the flooring of said bridges between the tracks and extending two feet on the out limits on either side of said track, either by furnishing the material and labor therefor or by paying this plaintiff for the work and materials by it furnished for the same; that thereafter, towit: in or about the month of March, 1903, being duly called upon by the proper authorities of the city of Baltimore to make needed repairs to the flooring of said Maryland avenue bridge, and being legally compellable so to do, this plaintiff did accordingly at great expense repair the same, including that part thereof covered by the tracks of defendant, and extending two feet on the out limits on either side of said tracks and which, as aforesaid, the defendant was legally bond to keep in thorough repair, the cost to the plaintiff for repairing said part of said flooring amounting to a large sum, towit: the sum of seventeen hundred and seventy-three 48-100 dollars ($1,773.48); that thereafter, towit: in or about the month of October, 1904, the plaintiff being duly called upon by the proper authorities of the city of Baltimore to make needed repairs to the flooring of said Charles street bridge, and being legally compellable so to do, did accordingly repair the same at great expense, including the part of said flooring covered by the tracks of defendant and extending two feet on the out limits on either side of said tracks and which the defendant was, as aforesaid, legally bound to keep in thorough repair the cost of repairing such part of said flooring amounting to a large sum, towit: the sum of three hundred and twenty-six 41-100 dollars ($326.41); that by reason of the

premises the defendant became and was and is indebted to the plaintiff in a large sum, towit: the sum of two thousand and ninety-nine 89-100 dollars ($2,099.89), but though frequently thereunto requested, hath refused and still refuses to pay the defendant the same or any part thereof.

6. For that whereas heretofore the plaintiff was the owner and in possession of certain land and premises in the valley of Jones' Falls in the city of Baltimore, used for railroad purposes, and at the time and times hereinafter mentioned did so own, possess and use and doth now still so own, possess and use the same; that certain two public streets of the city of Baltimore known respectively as Charles street and Maryland avenue, duly opened and used as such were and are carried across said property of the plaintiff by bridges in the line of said public streets, which bridges are a part of said streets, duly opened and used as such and known respectively as Charles street bridge and Maryland avenue bridge; that, as between the city of Baltimore and the plaintiff, the plaintiff was and is legally bound and compellable to make all needed repairs to said bridges, when thereunto demanded by the proper authorities of said city; that heretofore, to-wit: before the year 1903, after said bridges had been constructed, opened and used for public travel, as they ever since have been, as a part of said respective streets, and while said plaintiff owned, possessed and used, as aforesaid, as it ever since has done, its said property crossed as aforesaid by said bridges the Baltimore City Passenger Railway Company, to whose rights and liabilities the defendant has by operation of law succeeded, was granted by the Mayor and City Council of Baltimore authority to lay, maintain and operate a double line of passenger railway tracks on Charles street, and on and over said Charles street bridge, as a part thereof, and the same was accordingly laid and has been ever since there maintained and operated by said Baltimore City Passenger Railway Company and the defendant, its successor, as aforesaid; that after said bridges has been as aforesaid constructed, open and used for public travel, as they ever since have been, as a part of said respective streets, and

while the plaintiff owned, possessed and used, as it ever since
has done its said property crossed as aforesaid by said bridges,
the Baltimore Traction Company to whose rights and liabili-
ties the defendant has by operation succeeded, was granted
by the Mayor and City Council of Baltimore authority to lay,
maintain and operate, a double line of passenger railway tracks
on Maryland avenue aforesaid and on and over said Maryland
avenue bridge as a part thereof and the same was accordingly
laid and has ever since been there maintained and operated by
said Baltimore Traction Company and the defendant, its suc-
cessor, as aforesaid; that such construction, maintenance, and
operation of said passenger railway tracks on and over said
bridges heretofore from time to time made necessary certain.
changes in the structure of said bridges, which said changes
were accordingly made at large cost, which the defendant and
its predecessors by reason of the premises were legally bound
to pay and accordingly did pay the same; that moreover, by
reason of such construction, maintenance and operation of said
passenger railway tracks on and over said bridges the cost of
keeping said bridges in repair was and is largely increased, and
by reason of the premises the defendant and its predecessors
was and were, and the said defendant now is, bound for such
increase in the cost of such repairs over and above what would
have been the cost of the same, but for the said construction,
maintenance and operation of said passenger railway tracks on
and over said bridges, and accordingly did pay the same until
the time and times hereinafter set forth; that heretofore, to
wit: in or about the month of March, 1903, the plaintiff was
called upon by the proper authorities of said city to make
certain necessary repairs to said Maryland avenue bridge, and,
being by law compellable thereto, did accordingly make the
same at great expense, whereof a large sum, to wit; the sum
of seventeen hundred and seventy-three 48-100 dollars
($1,773.48) was the increased cost of such repairs caused by
the said construction, maintenance and operation of said pas-
senger railway tracks on and over said bridge and which the
said defendant by reason of the premises was and is bound to

pay to the plaintiff; that, heretofore, to wit: in or about the month of October, 1904, the plaintiff was called upon by the proper authorities of said city to make certain necessary repairs to said Charles street bridge and being by law compellable thereto, did accordingly make the same at great expense whereof a large sum, to wit: the sum of three hundred and twenty-six 41-100 dollars ($326.41) was the increased cost of such repairs caused by the said construction, maintenance and operation of said passenger railway tracks on and over said bridge, and which the said defendant by reason of the premises was and is bound to pay to the plaintiff; but that the defendant, though frequently thereunto requested by the plaintiff, has refused and still refuses to pay to the plaintiff the said several sums, so as aforesaid payable by the defendant to the plaintiff, or any part thereof.

Wherefore, the plaintiff brings its suit and claims four thousand dollars for its damages.·

The case was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*John J. Donaldson* and *Shirley Carter*, for the appellant.

*Fielder C. Slingluff* and *T. Rowland Slingluff*, for appellee.

PEARCE, J., delivered the opinion of the Court.

This action was brought by the Northern Central Railway Company to recover from the United Railways and Electric Company of Baltimore, the sum of $2,099.89, claimed to be due and owing as its proportion of the cost of repairs to two bridges known as the Charles street, and Maryland avenue bridges which respectively form a continuation of Charles street and of Maryland avenue, two of the public streets of Baltimore City, running parallel to each other. Both of these bridges cross the valley below in which flows the stream known as Jones' Falls, and on the banks of which beneath said bridges are located the tracks of the Northern Central Railway.

To avoid the repetition of long names, we shall in this opinion refer to the Northern Central Railway Company as the "Railroad Co.," to the United Railways and Electric Company as the "Railway Co." and to the Mayor and City Council of Baltimore, "as the City."

The declaration as filed, contained six counts, the first four being the common counts for money payable by defendant to plaintiff, and the fifth and sixth counts being special counts, which we shall request the reporter to have transcribed in connection with this opinion. The defendant pleaded the general issue, never promised as alleged, and demurred to the fifth and sixth counts, and the demurrer to each of these counts was sustained with leave to amend. The plaintiff declined to amend these counts, but by leave of the Court amended the declaration by striking out the four common counts, whereupon judgment was entered on the demurrer for defendant, and plaintiff appealed. Before the ruling on the demurrer an agreement was filed that all ordinances of the city in anyway relating to the subject-matter of the suit should be considered as a part of the declaration in the case as fully as if the same had been set out at length therein. It will be seen by reference to the fifth count of the declaration, that it is there sought to recover upon the strength of the obligation alleged to be imposed by the condition in the grant of the city, upon the defendant as successor to the rights and obligations of the Baltimore City Passenger Railway Company, and of the Baltimore Traction Company, the cost of repairs between the tracks on these two bridges, and two feet upon either side thereof, upon the legal theory that these bridges are parts of the respective streets; and it will appear by reference to the sixth count that it proceeds upon the defendant's theory that these bridges are not parts of these streets respectively; and upon the further legal theory that if they are not parts of said streets, then they are the private property of the plaintiff, and that the defendant can not occupy or use that property without making compensation for the increased cost imposed upon the plaintiff as owner, by such use and occupation.

Three questions were raised at the argument:

1st. Are these bridges parts respectively of Charles street and Maryland avenue, within the meaning of the ordinances of the city relating to the laying of street railways thereon?

2nd. If so, is the plaintiff entitled to maintain this action upon the obligation alleged to be imposed by the condition in the said ordinances upon the defendant as successor to the rights and obligations of the original grantees?

3rd. If these bridges are not parts of these streets respectively, and therefore not within the scope of the supposed obligation can the plaintiff recover in this suit, the increased expense to which it is put by the use of its property by the defendant?

In order to a proper understanding of the legal effect of the averments of the declaration, it will be necessary to state the substance of some of the city ordinances which it was agrreed should be considered as set out in the declaration, and also something of the physical situation at the location of these bridges before the passage of any of these ordinances.

Previous to the year 1868, the railroad company after entering what were then the northern limits of the city went upon the west side of Jones' Falls, down and across certain streets to its station on Calvert street in Baltimore City. About the year 1868, its tracks under proper legal authority, after entering the nothern limits of the city were changed to the northerly or eastern side of Jones' Falls, and in going to Calvert Station, crossed Charles and Eager streets *at grade*, Maryland avenue, North and Calvert streets not being opened as streets at that time beyond Jones' Falls. In the year 1868, the property owners on Charles and Eager streets petitioned the city to raise the grade of Charles and Eager streets in order to cross the railroad above grade. This resulted in the passage of Ordinance No. 77 of 1868. The first section of this ordinance provided "that the grade of *Charles street*, between Hoffman and Lanvale streets, and of Eager street, between North and Buren streets shall be raised *by the Mayor and City Commissioner*, so as to enable the said railroad company to con-

struct its railway tracks *under said streets."* It must be noted here that Charles and Eager streets were then both *graded and paved*, and were in use *as streets*, and it was therefore provided by section two of that ordinance "that *all expenses incurred in making said change of grade* shall be paid by the Northern Central Railway Co." This necessarily included the cost of maintenance of said bridges by which alone this change of grade was accomplished. It seems to be entirely just equitable that the railroad company should bear the cost and expense of taking up the pavements already laid, and cutting through them in changing the route of the railroad for its convenience in the accommodation of the public.

From this ordinance of 1868 it will thus be seen that the railroad company was obligated to the city to keep in repair · the whole bridge forming the northerly extension of Charles street.

By Ordinance No. 44 of the year 1859, the Baltimore City Passenger Railway Company was granted the right "to lay double tracks upon Charles street from the northern limits of .the city to Read street, thence along Read street to Calvert street, &c." But as a condition of said grant, sec. 11 of said ordinance provided "that the *owners and proprietors of said railways* shall keep the streets covered by said tracks, and extending two feet on the outer limits of either side of said tracks, in thorough repair, at their own expense, and shall free the same from snow and other obstructions, in doing which they shall not cause to be obstructed the other portions of the street on either side of the railway tracks authorized by this ordinance to be constructed, and for non-compliance the Mayor and City Council may impose such reasonable fines not exceeding twenty dollars per square, to be collected as other city fines are now collected."

So much for the bridge over Charles street, and we now come to the bridge over Maryland avenue.

Maryland avenue was not opened as a public street across the valley of Jones' Falls until some time after 1877. In the meantime, in March, 1877, the case of the *Northern Central*

*Railway Co.* v. *Baltimore* 46 Md. 425, was decided in which it was held that the city must pay for the bridges necessary to carry North and Calvert streets across the valley of Jones' Falls, when those streets were opened across said valley, and as the result of that decision the bridges now continuing said streets were constructed. Subsequently Maryland avenue was opened across said valley, and the City accordingly built the bridge necessary for that purpose, and paid both the cost of its construction and maintenance up to the year 1882. Then ordinance No. 40 of 1882 was passed, as a supplement to Ordinance No. 150 of 1880 (which related to the Baltimore Union Passenger Railway Co.) and by said ordinance No. 40 of 1882, the Baltimore Union Passenger Railway Co. to all whose rights and obligations the Railway Co. in this case has succeeded, was granted the right "to lay down and construct double tracks upon Biddle street, from the intersection of said Railway Co's. tracks upon Park avenue to Maryland avenue, and like double tracks upon Maryland avenue from Biddle street to the northern limits of the city," the latter authority embracing that part of Maryland avenue supplied by the said bridge, and said ordinance further provided "that said tracks should be constructed, used and operated under the terms and conditions mentioned in ordinance No. 150 of 1880. The terms and conditions mentioned in that ordinance, are stated therein in the exact language of Ordinance No. 44 of 1859, which so far as it relates to the repair of said tracks, has been transcribed in full in the preceding part of this statement of the facts.

When Maryland avenue was opened and the bridge carrying it across the valley was constructed by the city, the Railroad Co. had but two or three tracks crossing the line of the street under said bridge. The street when graded so as to conform to said bridge was carried on a fill or a bank both to the north and south end of the bridge, obstructing the Railroad Co's. property beneath these fills and preventing the laying of additional continuous tracks on the property of the Railroad Co. Finding it necessary however to have these

additional tracks, the city and the Railroad Co. entered into an arrangement for the removal of both said fills or banks, and the extension of the bridge both north and south. This was for the convenience of the Railroad Co. and the city granted it the right to make those changes in Ordinance No. 132 of 1890, entitled "An Ordinance to authorize the Northern Central Railway Company to move the north abutment of the bridge *which carries Maryland avenue over its tracks,* and also to extend said bridge southward to the bridge over Jones' Falls," and this ordinance provided "that all the work authorized by this ordinance shall be done under the supervision and to the satisfaction of the City Commissioner, *and at the sole cost and charge of said Railway Co,*" and, "that the bridge over the tracks of the Railway Co. as well that now existing, as the extension thereof hereby authorized, shall always be maintained at the sole cost of the Northern Central Railway Co.".

It thus appears that the Railroad Co. is under legal obligation to the city to maintain both said bridges in repair, by virtue of the ordinances granting it, for its own convenience, rights and privleges in the streets extended by means of said bridges; and that the Railway Co. is under legal obligation to the city to keep in repair that portion of the beds of Charles street and Maryland avenue occupied by their tracks, and two feet on either side thereof, by virtue of the condition in the ordinances granting them authority to lay said tracks in the beds of said streets; and if said bridges are parts of said streets, it also appears that this liability of the Railway Co. to the city applies as well to said bridges as to any other parts of said streets.

Upon that hypothesis therefore, both the railroad company and the railway company are liable to the city for the repair of said bridges, the former to the extent of *all* the necessary repair, and the latter to the *limited extent* provided in the grant of authority to lay its said tracks.

The demurrer admits the averments of the declaration in both counts, that the defendant recognized its liability ever

since the passage of said ordinances, down to the month of March, 1903, and "provided for the repairs needed to the flooring of said bridges, between the tracks, and extending two feet on the out limits on either side of said track, either by furnishing the material and labor therefor, or by paying the plaintiff for the work and materials by it furnished for the same," but that since March, 1903, the defendant has refused further to recognize any liability in the premises, and has refused to pay for its proportion of the repairs then made by the plaintiff as set forth.

The first question for determination is whether these bridges are *streets, or parts of streets*, within the meaning of the word *"streets,"* as that word is used in the ordinances imposing the obligation upon the owners and proprietors of the railways in question to keep in repair "the *streets* covered by said tracks, and two feet on the out limit of either side of said tracks."

It is not necessary to maintain that a *bridge* connecting portions of a city street, and forming the only means of passage from one portion to another, is for *all* purposes, and under *all* circumstances, a part of said street. Our inquiry here is whether *these bridges* for the purposes of *this* case, are parts of these *particular streets*. It will be observed at the outset of this inquiry that *under a grant from the city to the railway company of the right to lay its tracks in the streets* of the city, the railway company has laid its tracks on these *bridges* connecting portions of said *streets*, and that neither the city nor the railroad company has ever denied or questioned their right to do so under that grant. The grant would have been of no practical value to the grantee if it had been obliged to terminate its tracks at each end of these bridges, and the railway would have been of no practical value to the travelling public as a means of conveyance nor to the city as a source of revenue for the park tax imposed upon the street railways. To exclude therefore the right to use these bridges would be to nullify the practical advantages to the public and to both of the direct parties to the contract. But if the right so to use the bridges is a part of the contract then it must be subject to

the condition upon which the right is granted. In *North Bal-timore Passenger Railway Co.* v. *The North Avenue Railway Co.* 75 Md. 243, JUDGE ALVEY has said, "Where a contract with a municipality is susceptible of two meanings, one re-stricting, the other extending powers of the other party, that is to be adopted which works least harm to the municipality, In other words where there is a want of plainly expressed in-tention, the construction should be beneficial to the public," and that language was used in construing a grant made by the city to a street railway company for the use of its *streets*. In the case before us every beneficial interest of the municipality requires the words *streets* to include these *bridges*, and the beneficial interest of the railway company demands the same construction. If we now place ourselves in the situation of the parties to this grant, as we have a right to do, and should do, in order to avail ourselves of the light of the surrounding circumstances, and the conduct of the parties at the time, it will be seen that the parties themselves have left no doubt of their construction of the grant. We have examined the char-ter of the Baltimore City Passenger Co., ch. 71 of 1862, and the charter of the Baltimore Union Passenger Co., ch. 47 of 1882, and neither of these corporations were by their char-ters granted any authority to construct or build bridges, or to lay their tracks upon any bridges or in any streets in Baltimore City, except as granted by said city. Their only right, either under their charters or the ordinances passed in their behalf, is to lay their tracks in *streets* designated as such, and they have no authority from any source to lay their tracks on *bridges* as distinguished from streets in Baltimore City.

The City itself has been delegated by the State no power to build *bridges* as distinguished from *streets*, and it has always built such under its general powers to open and extend streets, and has done this through its Street Commissisners, or officers charged with that duty. The North street and Calvert street bridges were so constructed, and in *Northern Central Railway* v. *Mayor and City Council*, 46 Md. 445, where the proceedings in reference thereto were under review, the Court after consid-

ering the difficulties of crossing the railroad tracks either at grade, which would be dangerous to the public, or by fills which would destroy parts of the tracks of the Railroad Co., said "the. only mode in which *the proposed streets can cross the tracks*, without great injury both to the appellant and the appellee is by viaducts or raised ways of some description."

Since neither the charters of these companies nor the ordinances of the city made any reference to *bridges* as distinguished from *streets*, and as said companies laid their tracks upon said bridges without other authority, and the city assented thereto and as said companies ever since, down to 1903 and 1904, complied with the condition annexed .to the grant of the use of the *streets*, by keeping in repair the same proportion of trackage upon these *bridges* as upon these *streets*, it would be idle to deny that they regarded these bridges as parts of said streets, and that their present attitude is a departure from that which they have maintained for many years.

In *North Baltimore Passenger Railway Co.* v. *Baltimore*, 75 Md. 247, the appellant had been granted by an ordinance the right to "lay its tracks on, and use North avenue from Mc-Mechen to Charles street," which included North avenue bridge, and under that grant had laid its tracks on North avenue bridge. It then sought to restrain the city from giving another Railway Co. the right to lay its tracks on North avenue bridge, and the Court held that it was only "so much of the street as may be actually occupied that can be claimed to be exclusive of other tracks, and other parts of the street may be granted to competing lines." Here then is a plain *implication* that a grant to use the *street* is a grant to use a *bridge* forming the only connection between parts of that street. But that case does not stop with that implication; it states in explicit language that "the bridge known as North avenue bridge over Jones' Falls, is the property of Baltimore city, erected and maintained for public use, *and forms a part of North avenue, one of the highways of the City.*" The fact that North avenue bridge was the property of Baltimore City, is not material to the question in hand. The city had wisely

relieved itself of the burden of maintaining Charles street and Maryland avenue bridges, when it granted the Railroad Co. privileges for its own convenience under said bridges, but they were none the less highways of the city, as North avenue bridge was declared to be, and the City could no more forbid public travel across these bridges than it could across North avenue bridge, merely because it had imposed upon the Railroad Co. and upon the Railway Co. as a condition of the right of the latter to lay its tracks thereon, the obligation to repair these bridges so as to keep them in safe condition *as public highways.*

An emphatic and significant circumstance in connection with Charles street bridge and with Eager street bridge, is found in the language of ordinance No. 77 of 1868, which provided "that the grade of Charles street between Hoffman and Lanvale, and the grade of Eager street between North and Buren streets, be raised and changed nnder the direction of the Mayor and City Commissioner *so as to enable the Northern Central Railway to construct its railway tracks under said streets.*"

This Ordinance is not so suggestive of deliberation and design in describing the tracks as laid under the *streets,* as it is of common sense and natural adherence to language appropriate to the work the city was specifically authorized to undertake, viz. the opening and extending of streets whether at, above or below grade.

The weight of authority in well considered cases sustains the view expressed in 75 Md. *supra.*    In *Chicago* v. *Powers,* 42 Ill. 169, plaintiff's intestate stepped off one end of an un-. lighted draw bridge spanning a stream which crossed the line of a city street and was drowned. The defence was that though the city had power to lay a tax to light its *streets,* that power did not include the lighting of bridges. But the Court rejected this defense and said, "It seems to us to be obvious that a bridge over a stream crossing a street, is a part of the street. It is as much so as the cover placed over a drain, or a sewer crossing a street. Persons travel over it as

they do over other portions of the street.    It is, and must be, a part of the street."

In *McDonald* v. *Ashland*, 78 Wis. 251, a bridge built by a private citizen with lumber furnished by the city and forming part of a platted street used by pedestrians was held to be a public way; and in *Birmingham v. Rochester City Railway Co.*, 137 N. Y. 13, a bridge over a canal interesecting a highway was held to be part of the highway, the Court saying "In substance and effect it is nothing more than a continuation of the city street."

We have been referred to but one case claimed to sustain the contention of the appellee, viz. *Cedar Rapids* v. *Railway Co.*, 108 Iowa 406.

In that case the city granted the right to lay its tracks on "the streets, avenues and bridges of the city," but in terms imposed the duty of repairs only as to *paved streets*. That case comes within the rule of *ex pressio unius, exclusio alterius*, but in so far as it may on other grounds, sustain the contention of the appellee, we cannot accept it as satisfactory authority.

We now come to the second question in the case, whether there is such a privity of contract between the parties to this suit as entitles the plaintiff to any recovery.   The contention of the plaintiff, in the language of its brief, is, "that where two persons are legally liable to a third person for the same thing *ex contractu*, if one of said two persons performs the whole obligation to said third person, the other of said two persons is liable to the one who has so performed, in direct proportion as he is liable to said third person."

The right of the Railway Co. to maintain its tracks upon these two bridges under the ordinances of 1859 and 1880 was vested, and its liability to the city to keep in repair, the space occupied by its tracks and two feet on either side thereof, was fixed, when under the ordinances of 1868 and 1890 respectively, the Railroad Co. became liable to the city for the construction and maintenance of the bridges then erected.   The trackage rights of the Railway Co. on these bridges as parts of the streets was not thereby divested, nor was its liability

to the city for repair of its tracks thereon thereby released or extinguished. It continued unimpaired, though the city could thereafter, at its pleasure, call upon the Railroad Co. to make all the needed repairs, or upon the Railway Co. for the limited repairs for which it is liable, and upon the Railroad Co. for all other needful repairs, and upon performance by the Railroad Co. of the primary and continuing duty of the Railway Co. to make its limited repairs, the contract of the Railway Co. with the city ought to enure to the benefit of the Railroad Co. and if the legal proposition of the plaintiff stated above is sustained by satisfactory authority it does so enure.

Two cases from the Supreme Court of Massachusetts are so strongly in point as to justify extended reference to them. The first of these cases is the *City of Lowell* v. *Proprietors of Locks and Canals*, 104 Mass. 18. The canal owners constructed a canal across a public highway in the city of Lowell, and built a bridge to restore the severed highway. A street railway had a grant for its tracks on this highway, upon condition that it should keep in repair the space between its rails and eighteen inches on either side, *both on streets and bridges;* and its tracks were accordingly laid on this bridge when it was opened for use. In the course of time, repairs became necessary within the limits of the Railway Co's. liability and the city called upon the Canal Co. to make such repairs. The Canal Co. refused to make them on the ground that they could only be demanded of the Railway Co. The city sued the canal owners, and the Court held that as the owners had built the bridge to carry their canal across the highway, they were liable to the city in the first instance for its maintenance, and for all necessary repairs. The Canal owners then brought suit against the Railway Co. for both the amount recovered from it by the city and also for some subsequent repairs made by it within the Railway Co's. limits, and a recovery was allowed. *Proprietors of Locks and Canals* v. *Lowell Horse Railroad Corporation*, 109 Mass. 221. The Court said, "That a street railway corporation, whose charter requires it to repair such portions of all bridges in a city as are occupied by its tracks, is

bound to repair such a portion of a bridge which .the owners of a canal have built over the canal, *and which as against the city he is bound to repair;* and if on his refusal the city makes such repairs and recovers judgment against him for the expense thereof, he can recover from the corporation the amount of the damages recovered by the city against him. * * * The duty thus imposed upon the defendant of *repairing a part* of a bridge, the *whole* of which, as between them and the city, the plaintiffs were obliged to maintain, was an obligation to do that which would be a *benefit* to the plaintiffs, *assumed* by the Railway Co. in the acceptance of their charter, and the plaintiffs having been obliged to meet that liability to the city, through the neglect of the defendant are entitled to recover the amount paid in discharge of it. *Carnegie* v. *Morrison,* 2 Metcalf, 381; *Brewer* v. *Sayer,* 7 Cush. 337."

In *Carnegie* v. *Morrison,* CHIEF JUSTICE SHAW said, "The law operating upon the act of the parties creates the duty, establishes the privity, and implies the promise and obligation on which the action is founded. The same instrument may constitute a contract between the original parties, and also between one or both of them, and others who may subsequently assent thereto, and become interested in its execution." A case more closely analogous in the relation of all the parties can scarcely be found, and the Massachusetts decisions are everywhere regarded as high authority. In *Small* v. *Schaeffer,* 24 Md. 158, the Court of Appeals of this State adopts the views expressed by CHIEF JUSTICE SHAW in *Carnegie* v. *Morrison, supra,* and quotes with approval the following passages from the opinion in that case: "When one person, for a valuable consideration engages with another by simple contract, to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain. an action for the breach of such engagement." This is not the Massachusetts law alone. In *Hendrick* v. *Lindsay,* 93 U. S. 149, the Supreme Court of the U. S. said, "The right of a third party to maintain *assumpsit* on a promise not under seal, to a third party for his benefit although much controverted is now the prevailing rule

in this country," and cites the same author cited in *Small* v. *Schaeffer*, 24 Md. *supra;* 1 *Parsons on Contracts*, 6 ed. 467.

It is not necessary, as contended by the appellee, that the contract must have been entered into at the time for the benefit of some *particular* third person. "If the person for whose benefit a contract is made has either a legal or equitable interest in the *performance* of the contract he need not necessarily be privy to the consideration." 9 *Cyc.* 381.

The rule is thus stated in 7 *Ency. of Law*, 2 ed. 107. "To have this effect the contract must have been entered into for his benefit, or at least such benefit must be the *direct result of performance* and within the contemplation of the parties."

The following cases from the New York Court of Appeals illustrate the judicial view generally. In *Carter* v. *Albany*, 43 N. Y. 399, a statute authorized as a public improvement a bridge connecting a pier with the adjoining land, the removal of which made it necessary in order to reach plaintiff's store to go over another more distant bridge. The statute provided that all damages caused to property should be paid by the city. The Court said, "The result of the passage of the law, and the assent of the city to its provisions was to put the city in the place of the State as to damages, here is the promise, the consideration, and the promisee, definitely brought out. The ultimate beneficiary is uncertain. *The third person need not be privy to the consideration*, nor need he be specially named." The city was held liable for direct but not for remote damages.

In *Little* v. *Banks*, 85 N. Y. 258, it was held that "contractors with the *State* who assume for a consideration received from the sovereign power, by covenant, express or implied, to do certain things, are liable in case of neglect to perform such covenant, to a private action at the suit of the party injured by such neglect, and such contract inures to the benefit of the individual who is interested in its performance."

These cases and the reasoning upon which they are founded, are satisfactory to us as controlling the present case, and we are therefore of opinion that there was error in sustaining the demurrer to the fifth count of the declaration.

The sixth count of the declaration proceeds upon the theory of the defendant that these bridges are not parts of streets, but maintains that the defendant is nevertheless liable for the increased cost of repairs caused by the construction, maintenance and operation of the defendant's tracks on said bridges, they being upon the the theory of that count, the exclusive property of the plaintiff, which the defendant cannot use without just compensation for such use.

Having determined that said bridges are parts of said streets within the meaning of the ordinances which impose upon the defendant the liability to repair, and fix the measure of recovery to which the plaintiff is entitled, there was no error in sustaining the demurrer to the sixth count in the declaration. For the error in sustaining the demurrer to the fifth count the judgment must be reversed.

> *Judgment reversed with costs to the appellant above and below and new trial awarded.*