CHURCH E. GATES & CO. v. JNO. F. STEVENS CONST. CO. et al.

CENTRAL UNION GAS CO. v. SAME.

(No. 7593.)

(Supreme Court, Appellate Division, First Department.   July 9, 1915.)

1. MUNICIPAL CORPORATIONS &⟶373—PUBLIC WORKS—MATERIALMEN'S LIENS —CLAIMS WITHIN STATUTE—"MATERIAL."

Lumber furnished a contractor with the city of New York for part of a rapid transit railroad, and actually used in building derricks, temporary trestle, fences, bracing, sheeting or sheathing, street flooring or decking, or supports for holding up a public street, is within the mechanic's lien statute; but lumber used for building offices and other temporary buildings, for constructing concrete molds, repairing cars, or otherwise used in the plant of the contractor, is not within the statute, for the word "material" means matter which is intended to be used in the creation of a mechanical structure or the substance matter of which anything is made.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. &⟶373.

For other definitions, see Words and Phrases, First and Second Series, Material.]

2. MUNICIPAL CORPORATIONS &⟶373—PUBLIC WORKS—MATERIALMEN'S LIENS —CLAIMS WITHIN STATUTE.

A claim for conduit rods, furnished the contractor and used for cleaning out electrical conduits permanently installed, is within the statute.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. &⟶373.]

3. MUNICIPAL CORPORATIONS &⟶373—PUBLIC WORKS—MATERIALMEN'S LIENS —CLAIMS WITHIN STATUTE.

A claim for dynamite, fuses, connecting wires, and batteries, furnished the contractor and used and consumed in blasting operations in the performance of the contract, is within the statute.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. &⟶373.]

4. MUNICIPAL CORPORATIONS &⟶373—PUBLIC WORKS—MATERIALMEN'S LIENS —CLAIMS WITHIN STATUTE.

A claim for builders' hardware and similar supplies, furnished the contractor and actually used by him, is within the statute, except that used for temporary buildings, for repairs to plant, and for steam drills.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. &⟶373.]

5. MUNICIPAL CORPORATIONS &⟶373—PUBLIC WORKS—MATERIALMEN'S LIENS —CLAIMS WITHIN STATUTE.

A claim for labor and materials in disconnecting permanent gas mains and furnishing and installing temporary pipes for the distribution of gas to abutting properties during the construction of the railroad is within the statute.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. &⟶373.]

6. MUNICIPAL CORPORATIONS &⟶373—PUBLIC WORKS—MATERIALMEN'S LIENS —CLAIMS WITHIN STATUTE.

A contractor with the city of New York for a part of a rapid transit railroad contracted with a bridge company for the riveted structural steel work and beams, payments to be made therefor monthly in installments of 90 per cent. of the value of the delivered materials, deliveries to be made f. o. b. within free lighterage limits of the city. Subsequently, for the convenience of the contractor, the contract was modified, so as to provide for a temporary delivery within New Jersey. At the time the

bridge company filed a lien, none of the steel was within the state of New York. *Held*, that the bridge company was entitled to a lien under the statute as against the objection that the statute was inapplicable to materials not furnished within the state.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 913; Dec. Dig. ☞373.]

7. BANKRUPTCY ☞192—RIGHT OF MATERIALMEN TO LIEN—TIME FOR FILING —BANKRUPTCY OF CONTRACTOR.

Liens of materialmen of a contractor, not filed until after filing of bankruptcy petition against the contractor, are valid, notwithstanding the bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 294; Dec. Dig. ☞192.]

Clarke and Dowling, JJ., dissenting in part.

Appeal from Trial Term, New York County.

Consolidated actions by Church E. Gates & Co. and the Central Union Gas Company against the John F. Stevens Construction Company and others. From a judgment sustaining mechanics' liens against funds in the hands of the City of New York, the trustee in bankruptcy of the John F. Stevens Construction Company appeals. Modified and affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Isham Henderson, of New York City, for appellant.

Arthur Knox, of New York City, for respondents Church E. Gates & Co. and Robert W. Higbie Co.

C. W. Wilson, Jr., of Brooklyn, for respondents Paine and others, as trustees.

Richard W. Smith, for respondent Central Union Gas Co.

Harry N. Wessel, of New York City, for respondents A. P. Dienst & Co.

Leon Lauterstein, of New York City, for respondent Cross, Austin & Ireland Lumber Co.

Lamont McLoughlin, of New York City, for respondent Rheinfrank Bldg. Material Co.

Raynal C. Bolling, of New York City, for respondent American Bridge Co. of New York.

Alvin C. Cass, of New York City, for respondents Clermont Sewer Pipe Co. and others.

James A. Hughes, of New York City, for respondent E. I. Du Pont de Nemours Powder Co.

Wakelee, Thornall & Wright, of New York City, for respondents Trexler and others.

Henry B. Corey, of New York City, for respondent Atlas Portland Cement Co.

HOTCHKISS, J. The trustee in bankruptcy of the John F. Stevens Construction Company (hereinafter called the Construction Company) appeals from the judgment herein, which sustained a number of mechanics' liens. The Construction Company was a contractor with

the city of New York for building, in what is known as the "cut and cover" method, a portion of the Westchester Avenue Rapid Transit Railroad, in the prosecution of which work the Construction Company contracted for the labor and materials which are the subject of the liens in question. On August 11, 1913, the Construction Company was adjudicated a bankrupt. Subsequently the trustee in bankruptcy entered into a contract with the Richard Carvel Company, Limited, for taking over and continuing the work. The first lien was filed August 12, and the last on December 4, 1913, all after the commencement of the bankruptcy proceedings. By an arrangement between the parties, the moneys due at the time of the bankruptcy from the city to the Construction Company were paid to the trustee, and the liens were by agreement transferred to this fund. Some of the claims in dispute may be classified, so as to reduce the number to be particularly examined.

Lumber Claims. These embrace the claims of Gates & Co., Yellow Pine Company, Cross, Austin & Ireland Lumber Company, Trexler Lumber Company, Higbie Company, and Rheinfrank Company. These claims were for material used for building temporary derricks, building a temporary trestle to support temporary gas pipes, building temporary offices and other temporary buildings, for constructing molds or forms for concrete, for fences, for temporary bracing in the street cut, street flooring or decking, sheeting or sheathing, and for repairing temporary cars. The claim of the Rheinfrank Company included steel I-beams used as supports for holding up the public street. Although the findings are not identical with respect of each of the several claims, practically the findings as to all of the lumber claims were to the effect that the lumber was "used up or consumed or cut up and distributed in and about said subway job."

B. S. Barnard. Claim for "conduit rods" used for cleaning out electrical conduits after they were permanently installed.

E. I. Du Pont de Nemours Powder Company. Claim for dynamite, fuses, connecting wire, batteries, and lead wire, all used in connection with blasting operations, and all of which, save the lead wire, was actually consumed and used up in the progress of the work.

A. P. Dienst Company, Incorporated. This claim was for a great variety of builders' hardware and similar supplies, for a considerable portion of which the lienor conceded it had no lien. The portion for which a lien was sustained was used in the construction of a derrick and temporary buildings, repairs to plant, construction of temporary chutes, bracing, sheeting or sheathing, street decking, a temporary railway for removing dirt, in making steam drills, uprights, stringers under the street surface railroad, and for blasting mats.

Atlas Portland Cement Company, Clermont Sewer Pipe Company, and Philadelphia Electrical & Manufacturing Company. These claims were for material actually incorporated into the completed work, and do not seem to be contested by the appellant.

Central Union Gas Company. Claim for labor and materials in disconnecting the permanent gas mains and furnishing and installing temporary pipes for the distribution of gas to abutting properties during the construction of the railroad.

American Bridge Company. The Construction Company had con-

tracted with the Bridge Company for the riveted structural steel work and beams necessary for the work in question, payments to be made monthly in installments of 90 per cent. of the value of the delivered material, deliveries to be made f. o. b. within the free lighterage limits of New York City. Subsequently, for the convenience of the Construction Company, the contract was modified so as to provide for a temporary delivery within the state of New Jersey. A considerable portion of the steel covered by the contract was delivered, paid for, and used. The lien was filed for an unpaid balance of $17,781.47.

Concerning the deliveries, the court below found: That up to August 11th (the date of the bankruptcy) the Bridge Company "furnished and delivered" steel of the value of $30,281.13, upon account of which $12,496.66 had been paid, leaving the unpaid balance of $17,781.47, which became due and payable as follows: August 10, 1913, $6,249.93; September 10, 1913, $8,503.43; November 6, 1913, $3,028.11. That prior to October 20th "said material" was by the Bridge Company delivered to the said Richard Carvel Company, the successor in interest of the Construction Company. That part of the entire purchase of steel was actually used in the railroad work, and that the part not so used was prior to October 20, 1913, "delivered at or near the site of said subway" for use in the work as needed. The court also found that at the time the lien of the Bridge Company was filed none of the steel in question "was within the state of New York." These findings leave the exact facts concerning deliveries somewhat cloudy. The evidence on the subject is to be found in the correspondence of the parties. On March 18, 1913, the Construction Company wrote to the Bridge Company, saying that it (the Construction Company) was endeavoring to make arrangements for the use of storage space in New Jersey, pending the completion of which it requested the Bridge Company to arrange to store at the expense of the Construction Company, and when the latter was ready to receive the steel the Bridge Company (or its carrier) should reload it on lighters and deliver at any point within free lighterage limits which the Construction Company might select. Replying to the foregoing, the Bridge Company expressed its assent to the proposed arrangement, adding:

"It being understood that material stored at Greenville will be considered as completely delivered under our contract and payments made accordingly."

On the day following the secretary of the Construction Company wrote to the Bridge Company, and in the course of his letter, referring to the proposal of the latter last above quoted, said:

"I presume you mean by this the receipt of the material, but that it is also understood, in accordance with our contract, that this material is really not delivered to us until we take it at some dock on the East River or the Harlem River; * * * in other words, there will be no additional expense to us for the lightering of this material when we are ready to use it."

On March 21st the Bridge Company expressed its assent to the foregoing. It is thus apparent that the only modification of the original contract was that the time for *payments* was to be computed from the date of the Greenville deliveries, but that the physical deliveries were to be made in New York City, as per the original contract. It

seems to be undisputed that all of the steel remaining in the Greenville yard at the time of the bankruptcy was taken possession of by the trustee, and sold or disposed of by him to the Richard Carvel Company, which company completed the work.

[1-5] In three recent cases I think we may discover the principles which, in the case of most of the claims in question, should guide us in determining whether they are of a character entitling them to the benefit of the statute. In the Powder Case (Schagticoke Powder Co. v. G. & J. Ry. Co., 183 N. Y. 306, 76 N. E. 153, 2 L. R. A. [N. S.] 288, 111 Am. St. Rep. 751, 5 Ann. Cas. 443), where the court held dynamite a proper subject of a lien, in the course of the opinion, Werner, J., said (pages 312, 313, 314 of 183 N. Y., page 155 of 76 N. E. [2 L. R. A. (N. S.) 288, 111 Am. St. Rep. 751, 5 Ann. Cas. 443]):

"The argument that dynamite is not a material, but a part of the contractor's plant, which, like picks and shovels or mechanical appliances, are used in the performance of work, but are not considered materials furnished within the purview of the statute, seems to us inherently unsound. A steam shovel, an engine and boiler, picks, shovels, crowbars, and the like, are tools and appliances which, while used in the doing of the work, survived its performance and remained the property of their owner. Not so, however, with materials that are used up in the performance of the work and are thereafter invisible, except as they survive in tangible results. We think that explosives, when used as substitutes for other recognized 'materials,' are covered by the same principle. They enter into and form a part of the permanent structure quite as much as the earth, rails, ties, culverts and bridges that we can see and feel. * * * "

Further on, Judge Werner said:

"Mason work may be done on a road in a dry country or season when large quantities of water must be hauled many miles for the preparation of the necessary mortar. Upon the completion of the structure and the hardening of the mortar, the water has as thoroughly disappeared as the powder after the blast. Again, lumber may be used in the construction of a building for the purpose of scaffolding. However, it does not thereby literally enter into the composition of the building, nor, so to speak, become a part of it. But, in my judgment, both it and the water have been 'used' in the construction of the building and mason work, within the meaning of the Lien Law and the purposes for which it was enacted."

In Public Works Co. v. City of Yonkers et al., 207 N. Y. 81, 100 N. E. 700, 44 L. R. A. (N. S.) 311, it was held that a steam shovel, leased to a contractor for use on a public work and then to be returned to the owner, is not "material," within the meaning of the Lien Law, and the owner is not entitled to a lien for the unpaid rent. Judge Werner again wrote for the court, and, referring to explosives covered by the Powder Case, said (page 83 of 207 N. Y., page 701 of 100 N. E., 44 L. R. A. [N. S.] 311):

"We decided that they were [within the statute] because they were not only used in the construction of the work, but were literally 'used up' in its performance."

And he then proceeds to quote what was further said in that case with respect to the steam shovel, picks, shovels, and other plant used in the performance of the work. Continuing, Judge Werner said (page 84 of 207 N. Y., page 701 of 100 N. E., 44 L. R. A. [N. S.] 311):

"Material means 'matter which is intended to be used in the creation of a mechanical structure' (2 Bouvier, Law Dict. [Rawle's Rev.] 341), or 'the substance matter of which anything is made' (Webster). It does not mean the machinery that may be used in the manufacture of materials, for it might as well be said 'that the mill by which the lumber is sawed, or the tools used by the mechanic in building a house, are materials furnished in the construction of the house, as to say that the machinery used in the manufacture of the artificial stone is to be considered as part of the materials used in the construction of the masonry work' "—citing Basshor v. B. & O. R. Co., 65 Md. 103, 3 Atl. 285.

Further on, Judge Werner refers to wooden molds for concrete blocks, which were to be returned to the owner after the completion of the work, as being without the statute.

In Shultz v. Quereau Co., 210 N. Y. 257, 104 N. E. 621, it was held that coal sold to a contractor engaged in building a state highway and used in generating steam for a road roller and traction engine, is not material within the statute. In this case, Judge Collin, writing for a unanimous court, referring to the Powder and to the Steam Shovel Cases, said:

"While the line of demarcation between those two decisions is not broad, it is real and indestructible, and a clear definition of it will suggest, at least, the answer to the question presented."

Judge Collin then points out that the powder was applied directly to the earth which had to be removed in order to complete the structure:

"The construction primarily, and not mediately, absorbed and included it. It and the substances which in the process of construction took the place of the earth it released entered into the construction in the same sense and with the same reality, although it did not remain a visible part of the completed improvement. It was not thus with the steam shovel. It as an article or substance, was not applied to the construction, upon the completion of which it remained substantially as it was at the beginning, and ready to be taken to and used upon another undertaking. *Its effects*, and not it, were applied directly to the construction, which did not absorb or include it. It did not lose its identity nor cease to exist as a separate article. It promoted and aided in, but was not a material furnished for, the construction. The distinction we are here expressing was made clear by our decisions already mentioned."

Judge Collin then proceeds to point out that the coal was but an adjunct of the steam roller, and later he cites a Wisconsin case (Barker & Stewart Lumber Co. v. Marathon Mills, 146 Wis. 12, 130 N. W. 866, 36 L. R. A. [N. S.] 875) which held that materials used for a cofferdam, constructed for the purpose of building a permanent dam, which latter was the subject of the contract, "and which were, in effect, destroyed by their use in the cofferdam or subsequent use, were the lawful subject of a mechanic's lien," of which case Judge Collin says, "Concerning which decision we express no opinion" (page 261 of 210 N. Y., page 622 of 104 N. E.); but he quotes and approves the following in the opinion of that case, which, after speaking of coal used in portable engines, oil used for lubricating building machinery, and food eaten by laborers, said:

"But all these things seem quite plainly distinguishable. They are at least one step further removed from the actual work of construction. They have neither physical contact nor immediate connection with the structure at

any time. They are used only to facilitate and make possible the operation of tools, machinery, or men, which in their turn act upon the structure. The authorities are unanimous in holding that no lien accrues for such materials."

The burden of the appellant's argument here is that no material is the subject of a lien which does not become a component part of the completed structure, although used in and about the work. It must physically enter into the work, or be actually consumed, destroyed, or annihilated in or about its physical connection with the work, to come under the statute. It is true that there are words in both the Powder Case and the Shovel Case which, torn from their context, would appear to give support to this argument; but I think the broad principle to be gathered from the three cases referred to is, generally speaking, that although plant, tools, and their adjuncts, which are but instruments for accomplishing the work, surviving its completion, and which are not used in the physical construction, are not within the statute, the case is different with materials which do come into physical use and contact, and which are used in immediate connection with the work, although neither permanently entering into it nor actually annihilated in the course of their use, but which, although remaining as physical substances after the work is completed, are, so far as their original form or condition is concerned, practically destroyed. Although Judge Collin was careful in the Powder Case not to commit the court to the decision that material used for a cofferdam would come under the statute, I think the principle to be drawn from the three cases sustains what Judge Werner said in the Powder Case when he used as an illustration lumber entering into a scaffold, and said that in his judgment lumber so used was the subject of a lien.

If a sound distinction can be drawn between scaffolds, which Judge Werner said were within the statute, and concrete molds, which he said were not within the statute, it may be that presumably the former are a special form of construction adaptable only to the particular work in hand, whereas the latter, not only survive the particular job, but may be used as part of the plant on other work. Applying the foregoing principles to the claims at issue, the following is the result:

Lumber claims—within the statute: Lumber used in building derricks, temporary trestle, fences, bracing, sheeting or sheathing, street flooring or decking, and the steel I-beams became used for supports. Not within the statute: Lumber used for building offices and other temporary buildings, for constructing concrete molds, repairing cars, or otherwise used in "plant." Barnard claim, within the statute. Du Pont de Nemours Powder Company claim, all within the statute. Dienst & Company claim, all within the statute, except so much as was used for temporary buildings, repairs to plant, and for steam drills. Central Union Gas Company claim, all within the statute.

[6] With respect to the claim of the American Bridge Company, the trustee argues that the statute is only applicable to materials furnished within the state, and that it has no extraterritorial force, citing Birmingham I. F. Co. v. Glen Cove S. Mfg. Co., 78 N. Y. 30, and Campbell v. Coon, 149 N. Y. 556, 44 N. E. 300, 38 L. R. A. 410. In the former case, a steam engine was sold and delivered in Connecti-

cut, and was by the purchaser transported to its works in this state, where it was erected, and it was held, the engine not having been furnished in this state, that there could be no lien. In Campbell v. Coon, defendant had contracted with a New Jersey iron works company to furnish and erect iron for a building in this city. The iron works company subcontracted with plaintiffs, residents of New Jersey, for a certain portion of the work, and plaintiffs agreed to deliver "at and for the building" in question. Distinguishing the Birmingham Iron Foundry Case, the court held that the fact that plaintiff was required to deliver on the job in New York gave him the right to a lien. The principle of this case sustains the lien of the Bridge Company.

[7] Finally, the trustee, appellant, objects to all of the claims on the ground that the liens were not filed until after the filing of the petition in bankruptcy. This question was decided adversely to the appellant in Hildreth Granite Co. v. City of Watervliet, 161 App. Div. 420, 146 N. Y. Supp. 449. The decision was by a divided court, but I am inclined to concur with the reasoning of Smith, P. J., who wrote for the majority.

The judgment should be affirmed as to all the claims, except such lumber claims as embrace items not within the statute, and except as to the claim of Dienst & Co., as to which there should be a new trial. But if the parties can agree upon the allowable items and amounts, new findings will be made, and the judgment modified accordingly, and, as thus modified, affirmed, with costs to those parties who succeed, and without costs to those as to whom the judgment is modified.

INGRAHAM, P. J., and SCOTT, J., concur.

CLARKE, J. We dissent from so much of the within opinion as holds that the American Bridge Company acquired a valid lien for the material not delivered in the state of New York, and vote for a reversal of the judgment appealed from in so far as it sustains such lien.

DOWLING, J., concurs.