Including Cases of October Term, 1921, and January Term, 1922.

## ROBERT J. GILL

*vs.*

## THOMAS MULLAN.

*Mechanics' Lien—Furnishing Materials—Coal and Oil—Depreciation—Time of Notice—Completion of Work—Separate Contracts.*

When lienable and non-lienable items are included in one entire contract for a specific sum, and the value of the lienable and non-lienable items is not apportioned, but is made the basis of a lumping charge, no lien can be enforced.                    p. 6

Coal and oil used in running the machinery employed by the contractor in doing the work, and depreciation of the machinery, do not constitute materials furnished, for the purpose of the mechanics' lien law, which gives no lien for materials furnished in Baltimore City, and consequently the inclusion of such items in the total contract price for work to be done there, without any apportionment of the items, will not preclude the claim of a lien for work so done.          pp. 6-10

The inclusion of a profit in the contract price, without any apportionment of such item, does not affect the right to a lien for the amount due under the contract.                    p. 6

The delay of a contractor in the final completion of certain grading work *held,* on the evidence, not to have been for the purpose of bringing his notice of intention to claim a lien within the time fixed by statute.                    p. 11

That certain notes were given to a contractor on account of work done by him, which notes, by the provision of the con-

tract, were to be given only on the completion of the work, was not conclusive that the work was completed when they were given, for the purpose of determining the time within which a lien claim could be filed.      pp. 11, 12

That a company, which was on the bond of a contractor, took over the work for its own protection, did not affect the right of a subcontractor, subsequently completing his subcontract, to file a claim within the statutory period after such completion.      p. 12

When materials are furnished, or work done, under separate contracts, the right to a lien must date from the time of furnishing the different parcels of material, or of doing the different pieces of work, and not from the last item.      p. 13

*Decided January 10th, 1922.*

Appeal from the Circuit Court No. 2 of Baltimore City (STUMP, J.).

Bill by Thomas Mullan against Robert J. Gill and others to enforce a mechanic's lien. From a decree for plaintiff, defendant Gill appeals. Reversed in part.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, and OFFUTT, JJ.

*Eben J. D. Cross* and *E. Ridgely Simpson,* for the appellant.

As to the definition of materials, the true test is whether there is a total or partial proximate consumption of values resulting in a corresponding and immediate enhancement in the value of the finished product, and at the expense of the contractor, or whether the supplies furnished or costs incurred are mere contributions to the personal property and equipment of the contractor. If the former, they are materials within the meaning of the mechanics' lien laws. *Johnson* v. *Starrett,* 127 Minn. 138; *Barker & Stewart Lumber*

*Co.* v. *Marathon P. M. Co.,* 146 Wis. 12; *Moritz* v. *Sands Lumber Co.,* 158 Wis. 49; *Avery* v. *Woodruff,* 144 Ky. 227; *Darlington Lumber Co.* v. *Westlake Co.,* 161 Mo. App. 723; *Chicago Lumber Co.* v. *Douglas,* 89 Kans. 308.

Such is the general rule in regard to coal and oil. *Howard & Berry* v. *National Surety Co.,* Cir. Ct. for Charles County (Md.); *South Maryland Bank* v. *National Surety Co.,* 126 Md. 290; *Johnson* v. *Starrett,* 127 Minn. 138; *Pacific Sash & Door Co.* v. *Bumiller,* 162 Cal. 664; *Zipp* v. *Fidelity & Deposit Co.,* 73 App. Div. (N. Y.) 20.

Although a contrary view has been taken by the courts of New York and Massachusetts, in regard to coal furnished for fuel, the artificial distinction which was applied by those courts has been severely criticized. *L. R. A.* 1915 E, footnote, pp. 986-9; *Chicago Lumber Co.* v. *Douglas,* 89 Kan. 308. And is inconsistent with the view taken by the same courts that explosives furnished for a piece of construction work constitute materials furnished for the job. *Schaghticoke Powder Co.* v. *Greenwich, etc., Co.,* 183 N. Y. 306; *Sampson Co.* v. *Commonwealth,* 202 Mass. 326.

The rule that one who furnishes explosives for a building operation is entitled to a mechanics' lien in a proper case for materials, is of uniform application. 2 *Jones, Liens* (3rd Ed.), sec. 1347A; *Grant Powder Co.* v. *Oregon Pac. Ry.,* 42 Fed. 470; *Hazard Powder Co.* v. *Byrnes,* 12 Abb. Pr. (N. Y.) 469; *Powder Co.* v. *Railroad,* 113 Tenn. 382; *Keystone Mining Co.* v. *Gallagher,* 5 Colo. 23; *Grant Powder* v. *Flume Co.,* 78 Cal. 193; *Rapauno* v. *Rwy. Co.,* 59 Mo. App. 6.

Depreciation or shrinkage in the value of machinery or equipment on a particular job and to the extent of such shrinkage or depreciation constitutes *pro tanto* a consumption, or furnishing of materials for that job identical with the combustion of coal or the explosion of powder or dynamite or the appropriation of an entire piece of machinery to the contract. In each case there is a physical consumption of values, differing in degree only, which directly enhances the value of

the finished product on which they are consumed or to which they are appropriated.    Where lumber is supplied in the erection of a building or other construction work for temporary use as moulds or forms for concrete or masonry, and after having served its purpose is removed by the one supplying it, he is entitled to a lien for materials furnished to the extent of the loss in value sustained by such lumber in the performance of this temporary service.  *Darlington Lumber Co.* v. *Westlake Const. Co.,* 161 Mo. App. 723; *Moritz* v. *Lewis Const. Co.,* 158 Wis. 49; *Chicago Lumber Co.* v. *Douglas,* 89 Kan. 308; *Consol. Lumber Co.* v. *Bosworth* (Cal.), 180 P 60; *York Lumber Co.* v. *McKnight,* 139 Tenn. 687; *Stimpson Mill Co.* v. *Feigensòn Eng. Co.* (Wash.), 170 Pac. 573.

It is immaterial that in the case at bar the loss in value was sustained by machinery, while in the cases cited it was with reference to lumber.    The principle is the same.    In both cases there is an immediate consumption of materials for the benefit of the finished product.    There can be no distinction predicated on the fact that in the one case the article depreciated consists of wood and in the other of metal.    The reasoning of the courts in those cases applies with equal emphasis to the case at bar.

*John D. Nock,* with whom were *Benson, Nock & Rowe* on the brief, for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a decree of Circuit Court No. 2 of Baltimore City, providing that unless the defendants paid to the plaintiff (appellee) within thirty days, the sum of $975, with interest from November 18, 1920, and the costs, the property described should be sold by the trustee named. The Seaboard Engineering Company contracted with Robert J. Gill to erect eight two-story brick houses in Baltimore City, and on the 24th of July, 1920, that company and Thomas Mullan entered into a contract by which Mullan agreed to grade the lots from the backs of the houses to the

rear line of the lot, for which the company agreed to pay him $2,400 as therein set out. In the agreement there was this provision:

> "It is understood that this is to be a rough steam-shovel job of grading, and no trimming up or hand work will be necessary."

Mullan gave Gill notice of his intention to claim a mechanics' lien on the eight houses for $975—designating $121.87½ as his claim against each house and lot, and on the eighteenth of November, 1920, filed his lien. His account was made up of $2,400 for excavating, begun July 12th, 1920, and completed October 23, 1920, as per his contract with the engineering company, and $75 for grading begun July 19th, and completed October 23, 1920, as per verbal agreement with that company, entered into July 17, 1920—thus making, $2,475. That was credited with nine payments amounting to $1500—leaving the balance of $975, as claimed by him. The $75 was for "cutting away the earth for an alley alongside the houses," which was outside of the original contract, and seems to have been verbally made earlier than the written contract, which is dated July 24th.

By section 1 of article 63 of the Code, entitled "Mechanics' Lien," it is provided that: "Every building erected and every building repaired, rebuilt or improved to the extent of one-fourth its value in Baltimore City and in any of the counties shall be subject to a lien for the payment of all debts contracted for work done for or about the same, and in the counties, every such building shall also be subject to a lien for the payment of all debts contracted for materials furnished for or about the same." It is seen that in Baltimore City there is no provision for a lien for materials furnished.

It is contended by the appellant that, as in running the steam shovel there was the use of coal, lubricating oil, etc., and a depreciation of the shovel, and a profit on the contract, which items could not be included in the lien as work done

but should for the most part be treated as materials, there can be no lien filed for the lump sum of $2400—the items being in no way subdivided or apportioned. It is well settled that: "When lienable and non-lienable items are included in one entire contract for a specific sum, and the value of the lienable and non-lienable items is not apportioned, but is made the basis of a lumping charge, no lien can be enforced." 20 *Amer. & Eng. Enc. of Law* 359, quoted with approval in *Evans Marble Co.* v. *Internat. Trust Co.*, 101 Md. 210, 215. See also *Dunn* v. *Brager*, 116 Md. 242; *Maryland Casualty Co.* v. *Lacios*, 121 Md. 686. As there can be no mechanics' lien in Baltimore City for materials furnished, this lien could not be enforced if the appellant's contention was correct that it included what must be treated as materials, but we cannot admit that the great weight of authority is in favor of the appellant's contention, or that there is any decision in this State sustaining his position in this case. There are cases outside of the State which tend to support his contention, but the terms of some of the statutes are different from ours, and we cannot approve of the reasoning that would thus make such items materials within the meaning of our statute, instead of being included in the cost of work done. In *Basshor & Co.* v. *Balto. & O. R. Co.*, 65 Md. 99, the railroad company contracted with the Hoopes Artificial Stone Company to build its bridges over the Gunpowder River. The masonry work was to be built of artificial stone, to be made of ground stone, sand, and cement. The Hoopes Company bought certain machinery of Basshor & Company for grinding the stone, and also bought appliances to carry the stone when made to the piers of the bridges. It was contended that the machinery and appliances sold to the contractor were materials furnished in the construction of the bridges, within the meaning of the mechanics' lien law, but that contention was denied, and JUDGE ROBINSON said: "When the law says the material man shall have a lien for all materials furnished for, or used in and about the con-

struction of bridges, it means such materials as ordinarily enter into, or are used in the construction of bridges, and which are fairly within the express or implied terms of the contract, between the owner and contractor. It does not mean the machinery that may be used for the manufacture of the materials themselves."

In *Evans Marble Co.* v. *Internat. Trust Co., supra,* after saying that, when a party supplies material and also does work on a building under an entire contract, and "the compensation to be paid therefor is one entire price or lump sum for both labor and material, so as to make it indistinguishable what is intended to be paid for labor and what for materials," he is not entitled to any lien in Baltimore City, where a lien can only be filed for the payment of debts contracted for work done, JUDGE JONES went on to say: "It is also claimed that the contract of Bevan embraced materials as well as work to be furnished in that it provided that he should furnish models for the work to be done thereunder. The furnishing of these models, however, was not a furnishing of materials for the building. These were not material to go, or to be incorporated therein. They were intended as a means of guiding and fashioning the work to be done and as an aid to the proper execution of the work; and could therefore be properly taken into account in fixing a suitable price for the same. The contract was for work only. The models were but an instrumentality for its accomplishment."

There is nothing in the case of *Southern Md. Bank* v. *Nat. Surety Co.,* 126 Md. 290, which throws any light on this case. That was a suit by the State, use of the bank, against the surety company, for money loaned by the bank to a contractor who engaged to build a section of the public highway. It was contended that the money was used in paying for labor and materials, but it came before the court on a demurrer and there was no allegation in the declaration that the loan was made upon that condition, or that the contractor could not with entire propriety have used it for any other purposes,

and the Court affirmed a judgment entered upon the ruling of the lower court on the demurrer. The condition in the bond sued on in that case was that the contractor "shall promptly pay in full all just debts of labor and materials incurred by such contractor in the construction and improvement of the road contracted for," and while the Court did not find it necessary to pass on the ruling said to have been made by JUDGE BRISCOE in the circuit court to the effect that recovery could be had against a bond similar to the one in that case for an indebtedness incurred by the contractor for coal with which to operate his machinery, it is manifest that the provision in the bond was very different from that in the statute now before us. In the case of *Maryland Casualty Co.* v. *Lacios, supra,* the court found under the evidence that there was a contract to do the work of painting and also to furnish material, and there being an indivisible contract, including the furnishing of materials and labor, there could be no lien for the payment of labor or the material supplied. That was a wholly different case from this. It may well be that a painter may make bids for painting a house, including furnishing the material at a sum named, or to paint the house for a less sum if the owner furnishes the material.

We find nothing in the above or any other Maryland cases which tend to support the appellants' contention as to the coal, oil, etc., and there is still less reason for holding that the depreciation of the steam shovel is to be taken into consideration in determining such a question as is before us. A prudent contractor or other owner of such a machine may, in keeping his accounts, very properly allow some depreciation on it from time to time, as he might very well want to know what a machine which cost him $10,000, as this shovel did, was worth, and, in making a contract for doing work, he would take into consideration a proper depreciation of his shovel when the price was agreed upon, just as he does when he estimates the profits he can make out of a job of work, but there can be no valid reason why he would have to lose the

amount of such depreciation or his profits, if he protected himself by filing a mechanics' lien. A contractor or sub-contractor can of course employ others to help him in the work, and he can use such instrumentalities in doing this as he may find desirable, as is shown by what we said in *Evans Marble Co. v. Internat. Tr. Co., supra.*

There can be no more reason for holding that the value of the coal or lubricating oil used in connection with running a steam shovel would prevent a lien under this statute for work done, than the cost of feed for horses would, if they were used for shovels or other instruments in such work as grading, excavating, etc. In the note to *Gilbert Hunt Co. v. Parry,* 59 Wash. 646, in Ann. Cas. 1912 B 227, it is said that: "As announced in the reported case the general rule is that articles furnished for use merely as tools and appliances in carrying on the work of construction are not materials for which a mechanic's lien may be claimed,"—citing decisions from twelve states in this country and one from Canada. It is said in that note that: "The reason for the rule is that the statutes are intended to give a lien for materials and other things which enter into and form part of the completed structure"—citing some cases and quoting at length from *Basshor v. Balto. & O. R., supra.* Many cases are cited in that note under the application of the rule, amongst others *Niagara Oil Co. v. McBee,* 45 Ind. App. 576, where a lien was denied for fuel furnished a contractor and used in drilling an oil well; *Cincinnati, etc., R. R. Co. v. Shera,* 36 Ind. App. 315, where a lien was denied for fuel used to operate a steam shovel in the construction of a railroad. In *Shultz v. C. H. Quereau Co.,* 210 N. Y. 257, Ann. Cas. 1915 B, 965, it was held that under a statute providing that a person furnishing materials to a contractor for the construction of a public improvement shall have a lien, coal sold to a state highway contractor, and used in generating steam in the boilers of road-rollers and traction engines, used in fulfillment of the contract, is not "materials" furnished for the

construction of the highway within such provisions, and hence claimant was not entitled to a lien. The court distinguished that case from *Schaghticoke Powder Co.* v. *Greenwich, etc., R. R. Co.,* 183 N. Y. 306, 5 Ann. Cas. 443, which was in reference to the use of explosives, and gave reasons for the distinction which we need not repeat, although for the most part we can concur in what was said. The opinion there refers to *George H. Sampson Co.* v. *Comm.,* 202 Mass. 326; *Thomas* v. *Comm.,* 215 Mass. 369; and *Barker, etc., Lumber Co.* v. *Marathon Paper Mills Co.,* 146 Wis. 12, 36 L. R. A. (N. S.) 875, where it was held that coal burned in engines used in operating the steam roller, etc., was not materials. In the *Wisconsin case,* the court decided that the materials used in a coffer dam constructed specially to make possible the building of the dam contracted to be built, and which were in effect destroyed by their use, were the lawful subject of a mechanic's lien, and went on to say: "It is certainly true that this doctrine must be carefully guarded or it may be carried to extreme and fanciful lengths. Thus it might be argued that upon the same principle, coal that is used in portable engines, oil that is used in the lubrication of building machinery, and even food which is eaten by laborers are all consumed in the construction of the building and hence are lienable materials. But all these things seem quite plainly distinguishable. They are at least one step further removed from the actual work of construction. They have neither physical contact nor immediate connection with the structure at any time. They are used only to facilitate and make possible the operation of tools, machinery, or men, which in their turn act upon the structure. The authorities are unanimous in holding that no lien accrues for such materials"—citing *George H. Sampson Co.* v. *Comm., supra; Philadelphia* v. *Malone,* 214 Pa. 90; *Standard Oil Co.* v. *Lane,* 75 Wis. 636; *Luttrell* v. *Knoxville, etc., R. Co.,* 119 Tenn. 492. *Johnson* v. *Starrett,* 127 Minn. 138, is cited to the contrary, but the terms of that statute seem to be quite different from ours.

The cases cited by us are sufficient to show that the weight of authority is not with the appellant, as claimed by him, on the question, and it seems to us that both upon authority and reason the lower court was right in not rejecting the claim upon the ground we have been considering.

The next question we will consider is whether the notice of intention to claim a lien was given within the time fixed by the statute—that is to say, "within sixty days after furnishing the same." The notice was served on November 4, 1920. Although Mullan left the property, taking with him his steam shovel and other implements, in the early part of August, the evidence shows that, while his work was for the most part completed, there was yet to be removed a quantity of stone and a large tree which, according to the witnesses, were unquestionably included in his contract, and he did not finish that work until Oct. 23. Mr. Clapham, the president of the engineering company, had told him that that must be done before he would consider the job completed and pay him what the company owed him. He testified that there was a large stone, approximately twelve tons, in the steam shovel operation, and it was too large to be taken out with the shovel without being broken up. He added: "It was up to Mr. Mullan to take it out. Also there was a tree on Mondawmin Avenue, and Mullan was to take both the stone and tree out." Mullan made some explanation as to why they were not removed sooner, but whether or not that would be satisfactory, he testified that Mr. Clapham said he need not hurry about those items. We are satisfied from the evidence that the delay was not for the purpose of bringing the notice within the sixty days in order to support his lien. It was said for the appellant that his taking two notes for $400 each, which were dated August 2nd, 1920, showed that Mullan's contract was considered completed, as the agreement between him and the engineering company provided for payment of $200 on July 23rd, $200 on July 30th, and $1,200 on completion of the work, and for the balance two notes

of $400 each, dated on the day of the completion of the
work, were to be given. But although the work was un-
doubtedly for the most part completed, there was still what
we have spoken of to be done, and on August 2nd, when the
notes were given, the engineering company still owed Mul-
lan $2,000 on that contract—the last payment made by it
being as late as October 11th, and then leaving $900 still
due. It is clear that the date of August 2nd was not re-
garded by them as the time when the contract was actually
completed in full, and the engineering company still had in
hand much more than sufficient to protect itself when it gave
the notes.

It is also contended that before the work was completed
the Massachusetts Bonding and Insurance Company had
taken it over, and hence the sub-contractor could not "re-
vive" his lien by the action taken after the termination of
the contract between the principal contractor and the owner.
It is not entirely certain that the bonding company did take
charge before Mullan started to complete the job, but assum-
ing that it did, we cannot hold that Mullan could not for
that reason complete his work and give the notice within
sixty days from its completion. The fact that some one else
had taken over the work of a contractor certainly could not
prevent a sub-contractor from giving the notice, if given
within the sixty days. But in this case the bonding company
took over the work as the surety of the engineering company
for its own protection, and it was really being done for the
benefit of the engineering company as well as the bonding
company. The cases of *Greenway* v. *Turner,* 4 Md. 296,
and *Treusch* v. *Shryock,* 51 Md. 162, relied on by the appel-
lant, presented wholly different facts from those in this case.
Without stopping to discuss them, or point out the differ-
ences between them, it is sufficient to say that they do not in
terms or by implication suggest that, when a sub-contractor
has a contract with the contractor and completes *that con-
tract* after a time when it is claimed that the contractor no

longer had any control, the sub-contractor cannot give a valid notice of his intention to claim a lien, and it might be added, especially in a case such as this, where the surety of the contractor, and not the owner, has taken charge in order to complete the contract made by the contractor.

The only remaining question is as to the $75 allowed in the decree in addition to the balance due on the $2,400 contract. There was error in that, as it was shown by Mullan himself that it was a separate contract which he performed shortly after beginning work. It is not contended that it was not done before he left in August, and, of course, a notice on November 4th was not within time. When materials are furnished under separate contracts, the right to a lien must date from the time of furnishing the different parcels of material and not from the last item. *Trustees of Germ. Luth. Church* v. *Hesse & Co.,* 44 Md. 453. And this rule will prevail "if the materials are furnished under distinct contracts, though to be used for the same purpose, or by the contractor in executing one and the same contract with the owner." *Watts* v. *Whittington,* 48 Md. 356. See also *Brunt* v. *Farinholt Co.,* 121 Md. 126, and other cases. Of course, the same rule applies to work done.

It follows that the decree must be reversed to the extent of the item for $75, but as the position of the appellee is sustained for the most part we will direct the costs in this Court to be equally divided.

> *Decree affirmed in part and reversed in part, and cause remanded, each side to pay one-half of the costs in this Court, including the transcript, and the appellant to pay the costs below.*