# FIDELITY & DEPOSIT COMPANY *v.* MATTINGLY LUMBER COMPANY.

[No. 14, January Term, 1939.]

218

*Decided February 22nd, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Washington Bowie, Jr.,* and *J. Stuart Galloway,* for the appellant.

*James Olon Scrimger* and *Daniel S. Sullivan, Jr.,* with whom was *Daniel S. Sullivan* on the brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

The judgment from which the present appeal is taken was entered upon an inquisition following a judgment by default (Code, art. 75, sec. 94) against appellant (defendant below) for failure to plead over after the trial court had sustained a demurrer to its general issue pleas as amplified by bill of particulars.

Primarily, the problem presented relates to the construction of three bonds executed to the Mayor and City Council of Baltimore by The P. C. Streett Engineering Company, as principal, and Fidelity and Deposit Company of Maryland, as surety, in connection with the awarding to the principal by the City of three separate contracts, one for the construction of a tuberculosis building at Baltimore City Hospitals, another for erecting an addition to Ward A of the same hospitals, while the third provided for building an addition to School No. 56 of Baltimore City.

The suit was instituted against the surety on the bonds. The declaration contains three counts, in each of which it is alleged that The P. C. Streett Engineering Company and the Mayor and City Council of Baltimore entered into one of the three contracts, and the Engineering Company covenanted for the furnishing to the City of all materials and doing all work for the completion of the construction applicable to the particular contract upon certain terms and conditions therein set forth, and the Engineering Company, as principal, and Fidelity and Deposit Company of Maryland, as surety, executed and delivered to the City a bond for the completion of the project referred to in the contract; that, at the request of the Engineering Company, the plaintiff furnished certain materials that were "installed, erected and incorporated in said structure or work" for which the Engineering Company was liable, but the plaintiff had not been paid therefor, and although all things had been done which were necessary to entitle the plaintiff to the performance by the defendant of the conditions of said bond to pay for such materials, the defendant had not been

paid the same and had not complied with said conditions in any respect. In each count plaintiff declared upon one of the bonds and included a list of materials furnished by it to the Engineering Company under one of the contracts and the prices at which the same were sold. With exception of contract dates, the character of the work contracted for, and differences in penalties, the bonds are similar. The surety bound itself to indemnify the obligee against costs, expenses, damages or losses to which it might be subjected by reason of the wrongful misconduct, negligence, or default upon the part of the Engineering Company in and about the performance of the contract and further agreed to "* * * promptly settle, pay and satisfy all claims, demands and suits made or instituted against the said The P. C. Streett Engineering Company by any and all persons, firms and/or corporations for the non-payment of labor performed in and about the erection of the structure or the work to be done under the contract for which the said The P. C. Streett Engineering Company is liable, including any and all extra work that may become a part of the contract, and for all material furnished, installed, erected and incorporated in said structure or work for which The P. C. Streett Engineering Company is liable * * *," etc. ·

Appellant's demurrer to this declaration was overruled, but since the correctness of that ruling was not raised in its brief nor in argument, any objection thereto may, under Rule 39, sec. 4, of this court, be treated as abandoned. However, as to the correctness of the ruling, see *Owings v. Owings*, 1 H. & G. 484, 489; *Small v. Schaefer*, 24 Md. 143; *Seigman, use of Shaffer, v. Hoffacker*, 57 Md. 321; *Northern Central Ry. Co. v. United Rys. Co.*, 105 Md. 345, 66 A. 444; *Mackenzie v. Schorr*, 151 Md. 1, 133 A. 821; Code, art. 75, sec. 15; *Sterling v. Cushwa & Sons*, 170 Md. 226, 183 A. 593; *Williston on Contracts* (Rev. Ed.), sec. 372.

After the demurrer to the declaration had been overruled, the defendant filed general issue pleas, and, in compliance with plaintiff's demand for the particulars there-

of, replied that the materials furnished by plaintiff, the price for which was sought to be recovered, were purchased for and became part of the plant and equipment of the Engineering Company and were used "either for forms for concrete or for scaffolding" and none of them were incorporated in the buildings referred to so as to become a permanent part of the same; that after being used for the purposes mentioned they were removed from the premises on which the buildings were located and sold under an execution issued upon a judgment obtained by another creditor of the Engineering Company; further, that such materials were not within the coverage of the bonds, and there was no liability on the part of the defendant therefor. Plaintiff demurred to the general issue pleas as thus amplified, and the demurrer was sustained. To determine the correctness of that ruling it becomes necessary to construe the pertinent provisions of the bonds sued upon.

Appellee contends that, by a fair construction of the bond provisions, the materials which it furnished are within the coverage, but further submits that even if this contention be not adopted, it is entitled to recover in this action under the doctrine of constructive annexation, upon the theory that such materials were constructively annexed to the buildings.

Appellant asserts, first, that under the conditions of the bond, it is not liable for the materials in question, and that such materials are to be regarded as a part of the plant and equipment of the Engineering Company; secondly, that even if it is to be held liable for the materials, the measure of damages is not their full value, but this sum must be credited with the salvage value of such materials after their use upon the structures erected. In over-ruling the demurrer to appellant's pleas as thus amplified, the trial court rejected the first of these contentions, and at the inquisition taken by the trial court that contention was renewed in appellant's offer to prove by a witness that none of the lumber sued for was incorporated permanently in the buildings.

Generally speaking, the construction of a bond is, like other contracts, governed by the intention of the parties at the time of its execution, and the intention is to be ascertained from a consideration of the bond provisions. *Strawbridge v. Balto. & O. R. R. Co.*, 14 Md. 360; *German Lutheran Evangelical St. Matthews Congregation v. Heise*, 44 Md. 453; 11 *C. J. S., Bonds*, sec. 40, page 419; *Head & Amory v. Providence Ins. Co.*, 2 Cranch (U. S.) 127, 2 L. Ed. 229. Thus in *Aetna Indemnity Co. v. Waters*, 110 Md. 673, 73 A. 712, 722, it is said: "In dealing with the construction of the bond in this case, and of the contract, the faithful performance of which it was intended to secure, we have kept in view the attitude assumed by us in several recent cases of a similar character, especially the case of *State, use of Smith, v. Turner*, 101 Md. 584, 61 A. 334, where we said: 'While the liability of the surety is not to be enlarged by mere implication, yet in the effort to ascertain what these duties are, a reasonable construction is to be given to the language of the statutes dealing with these duties, and the construction is not to be strained in order to effect a release of a surety, whose obligation is deliberately entered into, as a commercial transaction, and with the exclusive view to the pecuniary profit resulting from it'."

Later, in *State v. National Surety Co.*, 126 Md. 290, 94 A. 916, it was held that the rule that a surety is a favorite of the law and a claim against him is *strictissimi juris* did not apply to a commercial surety whose undertaking was essentially that of an insurer. And in 8 *Am. Jur.*, 723, appears this statement: "With respect to the construction of fidelity bonds, it has been repeatedly held that where the instrument is reasonably susceptible of two constructions, one favorable to the insured, and one favorable to the insurer, that construction will be adopted which favors the liability of the insurer for the act or default in question." See also *Champion Ice Mfg. Co. v. American Bonding & Trust Co.*, 115 Ky. 683, 75 S. W. 197; *Farmers & Merchants State Bank v. U. S. Fid. & Guar. Co.*, 28 S. D. 315, 133 N. W. 247.

A survey of cases, construing the meaning of the expression "materials furnished," discloses a wide diversity of judicial opinion, and for the most part the courts in those cases were considering the subject under mechanics' lien statutes (Code, art. 63, sec. 1 *et seq.*). Thus in *Philadelphia v. Perna Engineering & Contracting Co.*, 94 Pa. Super. 579, it was held that lumber used for forms, sheathing, and shoring, in connection with the construction of a sewer, none of which lumber remained in the completed structure, but was used up and destroyed in the prosecution and performance of the work, did not constitute "material furnished." See also *Oppenheimer v. Morrell*, 118 Pa. 189, 12 A. 307, where a mechanic's lien was denied for lumber used in erecting scaffolding for laying brick. The theory of this line of cases is stated in *Gary Hay & Grain Co. v. Fidelity & Deposit Co.*, 79 Mont. 111, 255 P. 722, to the effect that when the bond mentions only material, the surety is liable for payment for that which has gone into and become a part of completed work, and not all supplies furnished, since "supplies" is broader than "material," and means that which is and can be supplied sufficient for use or need, a quantity of something supplied or on hand, whereas "material" means substance matter of which a thing is made.

Opposed to those views are such cases as *Stewart-Chute Lumber Co. v. Missouri Pacific Ry. Co.*, 28 Neb. 39, 44 N. W. 47, holding that lumber, posts, etc., used in erecting temporary shanties for boarding houses used by workmen constructing a railway, were lienable items.

In the case of *Church E. Gates & Co. v. Jno. F. Stevens Construction Co.*, 169 App. Div. 221, 154 N. Y. Supp. 605, 611, a middle ground was taken, for while the court held that supplies used in constructing temporary buildings and for repairs to plant and steam drills were not lienable, it did hold that lumber used for temporary trestles, fences, bracing, etc., was "material furnished" within the mechanics' lien statute. It was said that "material" meant matter intended to be used in the creation of a mechanical structure or the substance matter of which

anything was made. After reviewing many decisions, the court there said: "The burden of the appellant's argument here is that no material is the subject of a lien which does not become a component part of the completed structure, although used in and about the work. It must physically enter into the work, or be actually consumed, destroyed, or annihilated in or about its physical connection with the work, to come under the statute. It is true that there are words in both the dynamite case [*Schaghticoke Powder Co. v. G. & J. Ry. Co.*, 183 N. Y. 306, 76 N. E. 153] and the shovel case [*Troy Public Works Co. v. City of Yonkers*, 207 N. Y. 81, 100 N. E. 700], which, torn from their context, would appear to give support to this argument; but I think the broad principle to be gathered from the three cases referred to is, generally speaking, that although plant, tools, and their adjuncts, which are but instruments for accomplishing the work, surviving its completion, and which are not used in the physical construction, are not within the statute, the case is different with materials which do not come into physical use and contact, and which are used in immediate connection with the work, although neither permanently entering into it nor actually annihilated in the course of their use, but which, although remaining as physical substances after the work is completed, are, so far as their original form or condition is concerned, practically destroyed. Although Judge Collin was careful in the coal case not to commit the court to the decision that material used for a coffer dam would come under the statute, I think the principle to be drawn from the three cases sustains what Judge Werner said in the powder case when he used as an illustration lumber entering into a scaffold, and said that in his judgment lumber so used was the subject of a lien." See, also, *Chicago Lumber Co. v. Douglas*, 89 Kan. 308, 131 P. 563; *Stimson Mill Co. v. Feigenson Engineering Co.*, 100 Wash. 172, 170 P. 573.

Our own decisions under the mechanics' lien statute of this State are not especially helpful in defining "materials," but in *Gill v. Mullan*, 140 Md. 1, 5, 116 A. 563, this

court held that, by the weight of authority, such items as coal and oil supplied for a steam shovel, also depreciation upon the shovel, were not "materials" within the meaning of the statute. In arriving at that decision, the case of *Barker & Stewart Lumber Co. v. Marathon Paper Mills Co.,* 146 Wis. 12, 130 N. W. 866, was quoted with approval to the effect that, while coal burned in engines used in operating a steam roller could not be regarded as materials, items used in a coffer dam constructed specially to make possible the building of the dam contracted to be built, and which were in effect destroyed by their use, were lawful subjects of a mechanic's lien. See also *Basshor v. Balto. & O. R. Co.,* 65 Md. 99, 3 A. 285; *Evans Marble Co. v. International Trust Co.,* 101 Md. 210, 60 A. 667.

Those decisions are sufficient to indicate that in defining "materials" as that term appears in our mechanics' lien statute, Maryland courts have definitely rejected one of the extreme doctrines recognized in other jurisdictions and have, by approval of the Wisconsin decision, rejected the other extreme, and indicated a willingness to adopt a ground between the two, such as is found in *Church E. Gates & Co. v. Stevens Construction Co., supra.*

But while such decisions are helpful in arriving at a definition of "materials" they are not necessarily controlling in the case at bar. Here, we are called upon to construe provisions of bonds which were not given in pursuance of any statutory requirement, hence it would seem that, in final analysis, our problem is to ascertain the intention of the parties at the time of their execution and give such intention force and effect. However, in approaching the problem, it is to be borne in mind that a contractor's bond can be drawn so as to cover the claims of those furnishing materials such as were supplied by appellee. *Hartford Accident & Indemnity Co. v. Net & Twine Co.,* 150 Md. 40, 132 A. 261.

Referring again to the pertinent provisions of the bonds, no doubt arises that the parties could have failed to intend that one of the surety's liabilities was to

"promptly settle, pay and satisfy all claims, demands and suits" against the engineering company for non-payment of labor "performed in and about the erection of the structure or the work to be done under the contract" for which the engineering company was liable, and this condition was made specifically applicable to extra work which might become a part of the contract. And it is self-evident that labor was required in building the concrete forms as well as scaffolding, for, without those, no structure could have been erected. Such labor is undoubtedly protected by the bond, and in the same sentence the surety binds itself to pay for "all material furnished, installed, erected and incorporated in said structure or work for which The P. C. Streett Engineering Company is liable." The lumber used for the forms and scaffolding were quite as essential to the creation of the finished structures as was the labor, for without it they could not have been erected, and in our judgment it would be unreasonable to hold that, by the language of the same sentence, the parties intended to protect the labor and not protect the material man, whose property made such labor possible; indeed there is, it seems, no difference in the coverage provided for labor from that which provides for material. A different conclusion would necessitate that we construe "and" in the phrase "all materials furnished, installed, erected and incorporated" in the conjunctive, but in such cases the intention of the parties must control, and to gratify this cardinal rule the conjunctive "and" should be construed in the disjunctive as "or" in order to give effect to this intent. 2 C. J., page 1342; 1 *Sutherland on Statutory Construction*, sec. 252; *Philadelphia National Bank v. Buchman*, 314 Pa. 343, 171 A. 589.

This view relative to the intent of the parties is strengthened when it is considered that they must have realized that, to erect the structures, lumber was to be used for building the forms as well as the scaffolding. Moreover, in their contract they used the term "materials," which certainly is broad enough to include lumber. It therefore appears that the language of the contract is

reasonably susceptible of the construction that it covers the lumber furnished by appellee. In view of this, it seems well settled that appellant, who is a commercial surety, cannot now limit its liability to a restrictive class of materials, no intention so to do being clearly expressed in its obligation. It follows that the lumber sued for was materials within the meaning of the bonds, and no error was committed by the trial court in sustaining appellee's demurrer to appellant's pleas as amplified. In thus holding, we are keeping in mind the fact that the demurrer to the particularized pleas admitted only their relevant and well pleaded allegations. It cannot, therefore, be said that the demurrer admits that the materials mentioned in the declaration became a part of the plant or equipment of the contractor, for that allegation is merely a conclusion of the pleader.

At the hearing on inquisition there was testimony as to the quantities and prices charged for the materials sold and delivered by appellee to the engineering company upon the various projects which the latter had contracted to erect, and it was admitted by appellant that demand for payment thereof had been made upon it by the plaintiff prior to the date upon which the suit was instituted. Appellant then tendered a witness by whom it offered to prove that the lumber sued for was not actually incorporated in the buildings erected, and formed no part of the finished structures, but was used solely for concrete forms or for scaffolding and subsequently removed from the sites and sold under an execution by another creditor of the engineering company; further that such materials were capable of being used over and over again for similar purposes.

Appellee's objection to that proffer was sustained and to this action the first exception was taken. We have already decided that the trial court was correct in sustaining a demurrer to the defendant's amplified pleas; and with one exception, viz.: that the materials were susceptible of being used over and over again, these pleas and the proffer are identical. It, therefore, becomes unneces-

sary to reconsider that question, except as the situation is changed by the offer to prove that the materials were susceptible of further use. During argument, appellant stressed the contention that, even though it was liable, such liability could not exceed the cost at which the materials were sold the contractor, less a proper deduction for salvage value, and claimed that by this ruling it was injured in being denied any credit for salvage. It is undoubtedly true that in a large number of mechanic's lien cases which have been considered, the courts, when allowing liens for materials, observed that the same had been used up in construction so as to become valueless, or had by reason of use been reduced to such condition as to lose their original character, but we have found no decision where any salvage value has been allowed against a claim which was lienable, nor has any decision been found by us under which a lien for materials was affected by salvage value. See annotation, 84 A. L. R. 455, *et seq.* And this result is quite understandable. If, as in the bonds under consideration, appellee furnished materials which were included within the coverage, are his rights to receive payment therefor lost because, having once delivered such materials upon the contract jobs, and parted with both title and possession, it is later discovered that, after they had served their purposes for the particular job, they have some salvage value? If so, it would seem that bonds given specifically to protect a party furnishing materials are of little effect. Certainly they would fail to afford the protection designed. If the bond protects the party selling the materials, such protection is afforded him upon their delivery on the contract jobs, and is not lost by what subsequently happens to such materials.

Apart from these considerations, however, appellant did not prove or offer to prove that the materials sued for herein had any definite value. In view of that situation, how could the court, sitting as a jury, have arrived at any salvage value? Under the theory that appellant was entitled to a credit for salvage value, such credit would have to be based upon some proof, and this was not ad-

duced. No error, therefore, was committed by the court in rejecting the proffer.

There remains for consideration the exception taken to the refusal of the defendant's prayer by which the court was asked to rule that the plaintiff was only entitled to recover for so much of the materials sued for as it shall find from the evidence were actually "furnished, installed, erected and incorporated in the several structures mentioned in the declaration." The instruction was granted with this modification, "the words 'actually furnished, installed, erected and incorporated' being given the definition and meaning implicit in Judge Dickerson's ruling on the demurrer to defendant's pleas as particularized." It having been determined that the rulings upon those pleas were correct, it follows that no error was committed in granting the instruction as modified.

The third exception pertains to the allowance by the trial court of interest upon appellee's claim and to the entry of the judgment. From what has been said, no error was committed in the entry of the judgment. There was proof in the case that demand for payment of the claim was made upon the surety on August 22nd, 1935. The trial court allowed interest from September 1st, 1935. In claims of this character, interest is allowable in the discretion of the jury or the trial court sitting as a jury. *Washington, B. & A. E. R. Co. v. Moss*, 130 Md. 198, 100 A. 86, and authorities there cited; *Bucher v. Federal Baseball Club*, 130 Md. 635, 101 A. 534. This being so, and it appearing that the time upon which interest was calculated was subsequent to the date upon which appellee demanded payment of his claim, the ground of the third exception is without merit.

*Judgment affirmed, with costs.*

OFFUTT, J., concurs in the result.
BOND, C. J., dissents.